Tamara McCARTY *v.* BOARD OF TRUSTEES of
the Little Rock Police Pension Fund

CA 92-1240 872 S.W.2d 74

Court of Appeals of Arkansas
En Banc
Opinion delivered March 16, 1994

*Lavey & Burnett*, by: *John L. Burnett*, for appellant.

*Arnold, Grobmyer & Haley*, by: *Robert R. Ross*, for appellee.

MELVIN MAYFIELD, Judge. This appeal seeks to reverse a decision of the Board of Trustees of the Little Rock Police Pension and Relief Fund which denied the appellant's application for disability retirement benefits.

The record on appeal is unusual in that it contains no testimony, and there is really no disagreement as to the facts. The facts are disclosed by the minutes of the meetings held by the Board of Trustees and a few letters and documents considered by the Board. Because of the difficulty in assimilating the information scattered throughout the record, this opinion will at times make reference to pages of the record. Appellant's abstract, however, is very complete, contains a helpful index, is in sequence with the record, gives adequate reference to the page numbers of the record, and abstracts the matters referred to in this opinion.

Appellant, Tamara McCarty, was a licensed police officer in the City of Little Rock when she received a series of on-the-job injuries. On March 21, 1988, the appellant filed a claim for retirement benefits with the Board. The statutory provisions which deal with police pension funds for cities of the first class are found in Ark. Code Ann. §§ 24-11-401 through -433 (Repl. 1992).

Section 24-11-423(a)(1) provides in relevant part:

> If any member of the police department shall become physically or mentally permanently disabled, and this fact is certified to by the physician on the board of trustees, he shall be entitled to retire and receive a pension as provided herein.

It is contended by the appellee Board that the appellant's claim was denied by the Board at its meeting on May 12, 1988 (R. 63), but the Board admits that the matter was subsequently reconsidered and finally denied at a Board meeting held on April 12, 1990. (R. 8-11). That decision was appealed to the Circuit Court of Pulaski County by a petition (R.3) and a notice of appeal (R.1) filed with the clerk of that court on May 14, 1990. Under the Administrative Procedure Act, which both parties agree is applicable, proceedings for review of the Board's decision "shall be instituted by filing a petition, within thirty (30) days after service upon petitioner of the agency's final decision." Ark. Code Ann. § 25-15-212(b)(1) (Repl. 1992).

Whether notice of appeal was timely filed is not discussed by either party. We note, however, that the record does not disclose when the Board's decision of April 12, 1990, was served on the appellant. The minutes of that meeting (R.8-11) do not show that either the appellant or her attorney was present, but even if the decision was served on her on April 12, the calendar for 1990 — of which we take judicial notice — shows that the thirtieth day thereafter was May 12, 1990, and that this was a Saturday. Under Rule 9 of our Rules of Appellate Procedure whenever any day for taking action under the rules falls on a Saturday or Sunday the time is extended until the next business day — which in this case was Monday, May 14. We have held that the specific provision in the Workers' Compensation Act providing that a notice of appeal may be filed within thirty days of the "receipt" of the order or award of the Commission controls rather than the provision in Rule 4 of the Rules of Appellate Procedure that requires the notice of appeal to be filed within thirty days from the "entry" of the judgment appealed from. *See Sunbelt Couriers* v. *McCartney*, 31 Ark. App. 8, 786 S.W.2d 121 (1990). However, there is no provision in the Workers' Compensation Act or the Administrative Procedure Act that conflicts

with the provision in Rule 9 of the Rules of Appellate Procedure that extends the time for filing the notice of appeal to the next business day when the last day for filing falls on a Saturday or Sunday. We think that provision should be followed here. Therefore, even if the Board's decision was served on appellant the day her claim was denied, the petition and notice of appeal filed on Monday — May 14 — would be timely. Moreover, if the Board's decision was not served until the day after the Board met on April 12, the thirtieth day after service would fall on May 13, which was a Sunday. Since Ark. Code Ann. § 16-10-114 (1987) provides that no court shall be open or transact business on Sunday (except to receive a verdict or discharge a jury), we believe that this statute, which is a general statute, would apply and allow the petition and notice of appeal filed on the next Monday — May 14 — to be timely filed. Thus, whether the Board's decision was served on appellant on April 12 or April 13, the petition and notice of appeal filed on May 14, 1990, was timely filed.

The Pulaski County Circuit Court ultimately affirmed the Board's decision and this is an appeal from that decision. The petition for judicial review (R. 3) alleged that after the appellant filed her claim on March 21, 1988, Dr. John Watkins (who, the record shows and the parties agree, was at that time the physician representative of the Board) advised the Board that appellant could perform satisfactorily a variety of jobs within the Little Rock Police Department, and based upon that information, appellant's claim was denied. However, it was also alleged that on June 27, 1988, the appellant was terminated from the department for being unable to perform her duties satisfactorily because of her disability; that in April of 1989, the Board reconsidered appellant's claim; and that after appellant was examined by various physicians, Dr. C.E. Ballard (who had replaced Dr. John Watkins as the physician representative of the Board) submitted a letter dated March 2, 1990, stating that in his opinion the appellant was *unable* to perform her duties as a police officer "as currently described." The petition also alleged that under Ark. Code Ann. § 24-11-423(a)(1) (Repl. 1992) when a member of the police department becomes disabled and this fact is certified to by the physician on the Board, the police officer shall be entitled to receive a pension. And the petition for judicial review asked that

the circuit court reverse the Board's decision which refused to grant the appellant a disability pension.

The record on appeal at that time consisted of the appellant's notice of appeal and petition for judicial review, the Board's response, and the minutes of the April 12, 1990, Board meeting. The Board's response admitted all the allegations in the appellant's petition except the allegation that appellant was entitled to disability benefits, but the response affirmatively stated that the letter submitted by Dr. Ballard on March 2, 1990, "is based upon standards which were developed and put in place by the City of Little Rock Police Department after the initial determination of Officer McCarty was made and are therefore irrelevant and inapplicable to the facts at hand."

Based upon the record described above (R.1-15), the circuit court entered an order (R.16-17) remanding the matter to the Board because the court could not determine what "standard, if any, was applied" by the Board in determining whether or not the appellant was disabled. The court remanded with directions for the Board to comply with the provisions of Ark. Code Ann. § 25-15-210(b)(2) (Repl. 1992) which provides that the Board's decision "shall include findings of fact and conclusions of law . . . accompanied by a concise and explicit statement of the underlying facts supporting the findings." This order was entered on February 15, 1991, and it stated that a time to accomplish its directions "is not established, but it ought to be done as early as convenient to the Board, its attorneys, and the applicant and her attorney."

It appears from the record that the Board met on March 14, 1991, heard a discussion from its attorney about the court's order and remand for a written finding of facts, and approved findings as presented by its attorney. (R.125-26). Those findings, however, were not filed with the court until a "Supplemental Record" was filed on May 22, 1992. In the meanwhile, the appellant filed, on March 18, 1992, an "Amended Complaint and Petition for Judicial Review," which contained 62 paragraphs of factual allegations. (R.20-43). These paragraphs are actually a chronological listing of the events that had occurred pertaining to the appellant's claim. They set out the dates of meetings of the Board and brief summaries of what occurred at those meetings as disclosed by the minutes attached as exhibits to the amended complaint

and petition for review. Some factual conclusions are alleged, but they do not appear to be in dispute. The exhibits to the amendment appear to have been eliminated by the clerk of the circuit court to avoid duplication, but they appear to be in the record as part of the supplemental record. This is made fairly clear by appellant's abstract.

The supplemental record filed on May 22, 1992, contains a page entitled "Supplemental Record" which states that it is filed for the Board, by its counsel, and with the agreement of the appellant, by her counsel, and that there is submitted "the attached documents as the Supplemental Record on appeal in conformity with the directions of the court." Counsel for both parties have signed this page. (R. 58). In spite of the filing of this supplemental record by the Board, it later filed a brief with the circuit court in which it stated:

> Defendant objects to the inclusion of all the documents attached to plaintiff's amended petition for judicial review as part of the record. Defendant has no objection to the supplemental record filed on May 22, 1992, being included as part of this record since those items could properly be considered responsive to the plaintiff's original notice of appeal as being "attachments pertaining to this case."

(R. 144). It is unclear just what portion of the record as filed in this court was objected to by the appellee Board, and the objection is not abstracted by either party and no reference is made to it by the briefs filed by the parties in this (appellate) court. We, therefore, think that any part of the record filed may be considered by us.

We come now to a discussion of the merits of this appeal. The findings (R. 133-36) made by the Board after remand by the circuit court are as follows:

> 1. On March 21, 1988, Tamara McCarty made application to the Little Rock Police Pension Board for disability retirement benefits. Officer McCarty's application was based upon a series of on-the-job injuries, the last of which occurred in April, 1987.

2. Officer McCarty's application and medical reports were submitted to John G. Watkins, III, M.D. for evaluation and response.

3. Dr. Watkins, in evaluating Officer McCarty relied upon job descriptions which were supplied to him by Captain Tim Dailey, the training officer for the Little Rock Police Department. The descriptions purported to be the then existing job descriptions for the Little Rock Police Department.

4. Dr. Watkins, following consultation with Officer McCarty's physician, Dr. Robert Abraham, determined that Officer McCarty could perform certain of the job assignments described in the information provided to him and that therefore she was not disabled. Dr. Watkins' letter to the Board dated May 12, 1988, and an affidavit which was executed by him shortly thereafter are attached marked exhibits "A" and "B", respectively, and incorporated by reference herein.

5. Officer McCarty was denied retirement based upon the criteria then in place at the Little Rock Police Department.

6. Officer McCarty was terminated by the Little Rock Police Department on June 27, 1988. That decision has been appealed through the Little Rock Civil Service Commission and through the Circuit Court of Pulaski County and has been affirmed on each appeal.

7. On April 25, 1989, Dr. Watkins moved that an independent evaluation of Officer McCarty be done after Chief Louie Caudell had established guidelines for the physical requirements for officers. Thereupon, Dr. Watkins resigned from the Board.

8. On June 8, 1989, a new physician member was selected and the matter was assigned to him for evaluation.

9. On March 15, 1990, Dr. C.E. Ballard, the new physician member of the Board, presented his findings as follows:

 (a) Under the earlier job description used by Dr. Watkins, he (Dr. Ballard) would not disagree with Dr. Watkins' determination that Officer McCarty was *not* disabled.

 (b) Under the *new* job descriptions Dr. Ballard would be compelled to find that Officer McCarty is disabled.

The entire matter was tabled by the Board at that meeting.

10. On April 12, 1990, the question of Officer McCarty's retirement was presented and the benefits were again denied.

The Board also made conclusions of law as follows:

11. Officer Tamara McCarty applied for retirement benefits on March 21, 1988. Her rights to such benefits were fixed by the standards and conditions existing at that time.

12. Job descriptions were supplied to John G. Watkins, III, M.D. by Captain Tim Dailey of the Little Rock Police Department which were represented to be the existing job descriptions for the Little Rock Police Department. Those job descriptions constituted the Little Rock Police Pension Board standards for determining disability at that time.

13. Officer McCarty was terminated from the Little Rock Police Department following this determination. The Board reconsidered her application for retirement benefits in March 1990, and denied them based upon the standards of disability found in the job descriptions which were in effect at the time of her original application. Those standards are found in the letter of May 12, 1988, from Dr. John G. Watkins to the Board.

14. Tamara McCarty is not disabled pursuant to Ark. Code Ann. § 24-11-423 and pursuant to the standards which were applied by the Board in March 1988.

■ The appellant argues on appeal to this court that the Board's decision is "unsupported by substantial evidence, arbitrary and capricious, and made upon unlawful procedure." Under

the Administrative Procedure Act, Ark. Code Ann. § 25-15-212(h) (Repl. 1992), it is provided that on appeal to circuit court the agency decision appealed from may be reversed or modified if the appellant's substantial rights have been prejudiced because the findings, conclusions, or decisions of the agency are

> (3) Made upon unlawful procedure;
>
> . . . .
>
> (5) Not supported by substantial evidence of record, or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

Both parties agree that "we review the decision of the board or agency, not the decision of the circuit court." *Arkansas Alcoholic Beverage Control Division* v. *Person*, 309 Ark. 588, 832 S.W.2d 249 (1992). The appellant argues that when the Board in May of 1988 denied her claim for disability retirement benefits its decision was based upon job descriptions furnished the Board by Captain Tim Dailey, the training officer for the Little Rock Police Department, which purported to be in effect at that time but which, in fact, were not in effect. In that regard, we note the conceded fact that in June of 1988, after the Board had denied her application in May of 1988, she was terminated by the police department for being unable to perform her duties satisfactorily because of her disability. We next note that the minutes of the Board's meeting of April 25, 1989 (R. 84), show that Tom Dalton, Chairman, called a special meeting of the Board because the city attorney's office had presented to Dalton "concerns that they might have as it relates to decisions being made on disability retirements." The minutes show that the Board voted to "obtain an independent evaluation of Mrs. Tamara McCarty [appellant] and Officer Ralph Howell" after the police chief had made a complete listing of the physical requirements which officers must pass. And, as noted in the findings of fact, Dr. Watkins thereupon resigned from the Board. His letter of resignation is in the record following the minutes of the April 1989 meeting (R. 85), and it states that he is resigning "due to lack of an objective set of physical measuring guidelines" which makes it impossible "to adequately advise the Little Rock Police Pension Board regard-

ing disability."

We then note that after the Board approved Dr. C.E. Ballard as the physician member of the Board on June 8, 1989 (R. 86), the Pension Clerk wrote the appellant on July 31, 1989, to advise that the Board had asked their medical representative to "secure a second opinion" regarding her back problem, and Dr. Ballard wanted appellant to contact Dr. John Adametz for an appointment as soon as possible. (R. 88). We then note that Dr. Ballard, in a letter to the Board dated March 2, 1990, wrote "it is my opinion that [the appellant] is disabled to perform her duties as currently described." (R. 99). Also, we note that the minutes of the March 15, 1990, Board meeting state that it was agreed to employ "outside counsel" to advise the Board on appellant's application for disability benefits. (R. 103).

We think it also significant that the record contains a memorandum to the Board from the city attorney dated March 28, 1990. (R. 105-10). This memo stated that the city attorney encourages the Board to obtain additional counsel but that "as an initial matter, I must mention that review of this case necessitates a parallel review of the Ralph Howell case." (R. 105). It pointed out that the Board had voted on June 8, 1989, to review both cases and had on November 9, 1989, voted to allow Howell a disability pension. (R. 105-06). A chronological statement of events is then set out. (R. 106-07). The city attorney's memorandum concludes with a discussion which points out that at the time of the applications of Howell and appellant the police department had a policy, as set out in a memo from the police chief (R. 110), that light duty work would be discontinued where no compelling need existed, and an officer who could not "perform his duties unrestricted" would be placed on sick leave or leave without pay. The city attorney's memo states that the appellant's termination was on that basis and that the appellee Board and the police department should use the same criteria.

When the circuit court remanded this case for the trial court to make findings of fact and conclusions of law (R. 16-17), the court said that it would be "illogical" for the Board and the police department to have different standards for the physical requirements of the police officers, and if one of them sets standards and the other one does not — it would be reasonable to conclude that

the non-acting one would have adopted the standard of the acting one.

After the findings were made by the Board and the matter was again submitted to the circuit court, the Board's decision was affirmed with the simple statement that a review of the record and the findings and conclusions filed by the Board "confirm that McCarty received a fair hearing and that substantial evidence of record supports the decision." (R. 254-55). The notice of appeal from that order states that the appeal is based on the points which we have previously set out in this opinion.

On pages 4 and 5 of the Board's brief in this court it argues in support of its decision (and the circuit court's affirmance of that decision) as follows:

> Therefore, the question becomes what job description should apply; those which were presented without objection to the Board in March 1988 or the policy adopted by the police department following the determination made by the Board. . . .
>
> Just as a pension plan member's rights to benefits become fixed when that member has vested in the system, the plan's obligations are fixed at the time application for benefits is made. . . .
>
> Officer McCarty allowed the Board to make its decision based upon job descriptions which were presented to it without objection. No effort was made until almost two years later to have the Board reconsider and apply a different set of job descriptions. Because the time for appeal of that decision had run, the basis for that decision had become *res judicata.*

We do not agree that the record supports the Board's argument. To the contrary, the record shows that when appellant made her application for pension benefits in March of 1988, the Board's decision was based upon job descriptions furnished the Board by the training officer for the police department, Tim Dailey, which were not, in fact, in effect at that time. The minutes (R. 63) of the May 12, 1988, meeting, at which the Board denied the appellant's application, show that its decision was based upon

a letter from its physician representative, Dr. Watkins. His letter follows the minutes of the meeting (R. 64) and attached the job descriptions he had used. However, there is no substantial evidence to support a decision that those job descriptions were in effect in May of 1988. The memorandum (R. 105-09) of March 28, 1990, by the city attorney, Mark Stodola, attached a letter from the police chief dated June 14, 1984, which was prior to appellant's application for retirement in March of 1988, in which the chief stated that "light duty" work assignment had been discontinued. To show that there really were no "light duty" assignments, and that the appellant was actually disabled in May of 1988 when the Board denied her application for disability benefits, we have the fact that on June 27, 1988, she was terminated "as being unable to perform the duties of her office satisfactorily because of her disability." In its response to appellant's petition for judicial review, the Board admitted that this was true. (R. 6). Then after a special Board meeting on April 25, 1989, the Board on its own motion voted to reconsider appellant's application. It then employed "outside counsel" to advise it in regard to appellant's application for disability benefits, and at the meeting on April 12, 1990, outside counsel, Mr. Ross, met with the Board.

The minutes of that meeting (R. 117-24), at which appellant's application was reconsidered, show the Board understood that the job descriptions it used when it denied appellant's application back in May of 1988 were not actually in effect at that time. The chairman, Tom Dalton, stated (R. 120) that they "were not active, accurate job descriptions," and the real discussion was whether the Board could have used a different standard. Mr. Furlow asked Mr. Ross, the Board's attorney, if the job descriptions the Board had acted upon could "be the same thing as accepting the job descriptions as the Board's job description". (R. 121). Another member, Mr. Pryor, asked if the job descriptions furnished the Board back in May of 1988 could be "at least standards by which it was judging disability at that time." (R. 121). The attorney's answer was "Obviously, that's what it would have to be." (R. 121).

█ To determine whether a decision is supported by substantial evidence, we review the record as a whole, and to establish the absence of substantial evidence to support the decision

the appellant must show that the proof before the administrative board was so nearly undisputed that fair-minded minds could not have reached its conclusions. *Wright* v. *Arkansas State Plant Board*, 311 Ark. 125, 842 S.W.2d 42 (1992). In the present case, we think the record as a whole contains proof so nearly undisputed that fair-minded minds could not reach a conclusion that the appellant was not disabled in May of 1988 from performing the duties of her job with the police department.

We come now to the real basis of the Board's decision. This is found in paragraph 12 of its findings of fact and conclusions of law dated March 11, 1991. (R. 133-36). This finding, under the heading "Conclusions of Law" states:

> 12. Job descriptions were supplied to John G. Watkins, III, M.D. by Captain Tim Dailey of the Little Rock Police Department which were represented to be the existing job descriptions for the Little Rock Police Department. These job descriptions constituted the Little Rock Police *Pension* Board standards for determining disability at that time.

(R. 135) (emphasis added). This conclusion of law presents another point relied upon for reversal by the appellant: "The Board's decision was made upon unlawful procedure."

 We first consider the conclusion, reached by paragraph 12 of the Board's findings of fact and conclusions of law, that the Board used *as its own standards* the job descriptions used by Dr. Watkins when he wrote to the Board (R. 64) on May 12, 1988, that the appellant could perform some of the jobs described in the police department's job descriptions attached to his letter. Also, we compare paragraph 12 with paragraph 5 of the Board's findings of fact and conclusions of law. Paragraph 5 states in reference to Dr. Watkins' letter (which is mentioned in paragraph 4) that "Officer McCarty was denied retirement based upon the criteria then in place at the *Little Rock Police Department*." (Emphasis supplied). Obviously, the only way, under the evidence in this case, for the Board to have its own standards is for the Board to have adopted the standards of the department. If that occurred, it must have been at the meeting of the Board on April 12, 1990, (R. 117), at which Mr. Furlow and Mr. Pryor asked the Board's counsel, Mr. Ross, if the Board could adopt the

police department's standards as its own, and Mr. Ross said "that's what it would have to be." (R. 121). The problem with this, however, is that the department's standard in May of 1988, when the Board denied appellant's application, was "no light duty," and under that standard the appellant was entitled to disability retirement. On the other hand, if the Board was adopting on April 12, 1990, standards different from the police department's standards in effect in May of 1988, this would be a retroactive, after-the-fact process, and the Board's decision based on such standards would be clearly made upon unlawful procedure. In *Jones* v. *Cheney*, 253 Ark. 926, 489 S.W.2d 785 (1973), the court said that where the legislature of a state creates a retirement system to which employees contribute, the legislature may not constitutionally impair the rights of those employees by legislation enacted after their rights become vested. Here, under Ark. Code Ann. § 24-11-413 (Repl. 1992) police employees contribute to the pension fund by payroll deductions. Thus, the Board in the present case could not adopt new standards in April of 1990 to apply to the application for retirement benefits which the appellant made in 1988.

■ The appellant's third point for reversal of the Board's decision is that it was arbitrary, capricious, or characterized by abuse of discretion. On this point, we call attention to the fact that the record shows that in his memo of March 28, 1990, the city attorney informed the Board it should consider the fact that it had at a meeting on April 25, 1989, voted to reconsider the applications for disability retirement of both appellant and Officer Ralph Howell, and the Board had granted Howell's application. (R. 107). It is clearly implied in the memo that the city attorney thought the two cases were governed by the same rules — he said the review of the appellant's case "necessitates a parallel review of the Ralph Howell case" (R. 105) and that the "no-light duty" policy in place and practice since 1984 applied to both appellant and Howell (R. 107). In the case of *City of Little Rock* v. *Martin*, 244 Ark. 323, 424 S.W.2d 869 (1968), the court said it was arbitrary to shunt aside an application for retirement pay while granting benefits to others in a identical category. Thus, appellant's argument that the Board's decision in the present case was arbitrary has merit.

The appellee Board argues that because the appellant did not

appeal from the Board's May 12, 1988, decision, that decision is *res judicata* and she cannot relitigate her claim. We do not agree.

First, we point out that the Board at a special meeting on April 25, 1989, (R. 84), on motion by its chairman, voted to obtain "an independent evaluation" of the appellant after having obtained from the police chief "a complete listing of definite physical parameters which every sworn officer on the force can pass at this time who is not on limited or declared light duty status." In February of 1990, the city attorney sent the Board a memo and attached a copy of the job requirements of the police department. (R. 92-97). The memo quoted and called special attention to a provision that said the officers "must be able, physically and mentally, to perform at all times all duties required of any sworn officer in any job assignment, including but not limited to effecting the arrest of a violent, resisting subject." It should be again noted that the city attorney in his memo dated March 28, 1990, advised the Board that the police department's policy on light duty "has been codified since April 1989, but has been officially in place by custom or practice since Chief Simpson's tenure [and] covers both Ms. McCarty's application and Mr. Howell's application." (R. 107). Attached to the memo is the memo from Chief Simpson dated June 14, 1984, which states that "several weeks ago a decision was made to discontinue light duty work assignment except in limited circumstances." (R. 110).

Therefore, reconsideration of appellant's application was granted by the Board. Nothing in the Administrative Procedure Act, Ark. Code Ann. § 25-15-201 through -214 (Repl. 1992), provides that an agency cannot reconsider its own decision. In *North Hills Memorial Gardens* v. *Simpson*, 238 Ark. 184, 381 S.W.2d 462 (1964), the court said:

> It is first contended by the applicant that the board's original denial of Rest Hill's application for a permit is *res judicata*. It is true that when an administrative board acts judicially or quasi judicially its decision may be res judicata in a second proceeding involving the same question. We are not convinced, however, that all the technical rules that make up the common-law doctrine of *res judicata* should apply with equal force to administrative proceedings.

238 Ark. at 185, 381 S.W.2d 464 (citation omitted). Other courts have made the same holding. *See Purter* v. *Heckler*, 771 F.2d 682, 691 (3d Cir. 1985) ("when *res judicata* is applied in the context of administrative proceedings under the Act, it is not encrusted with the rigid finality that characterizes its application in purely judicial proceedings."). In *Hall* v. *City of Seattle*, 602 P.2d 366, 369 (Wash. App. 1979), the court said:

> We think the proper view is that expressed by the Supreme Court of Minnesota in an analogous case:
>
>> Where through fraud, mistake, or misconception of facts the commissioner enters an order which he promptly recognizes may be in error, there is no good reason why, on discovering the error, he should not, after due and prompt notice to the interested parties, correct it.

We think the reasoning in *Hall* is particularly applicable to the case before us. Here, the Board made a mistake or misconception of facts and applied standards to the appellant's application that were not in force at the time. Upon discovering that mistake or misconception, the Board reconsidered its decision. We think that was proper and its May of 1988 decision did not prevent its reconsideration of the application in April of 1990. In fact, we think it would have been arbitrary, capricious, and an abuse of discretion if the Board had not reconsidered the application. The problem is — the Board did not make the right decision on reconsideration, and we must reverse the decision made.

Secondly, on the *res judicata* issue, long before the adoption of the Arkansas Rules of Civil Procedure and its requirement in Rule 8 that *res judicata* is an affirmative defense which must be pleaded, this was the rule in Arkansas. *See Kendrick* v. *Brown*, 211 Ark. 196, 199 S.W.2d 740 (1947); *Widmer* v. *Wood*, 243 Ark. 617, 421 S.W.2d 872 (1967). This rule also applies in administrative hearings. *See Poulin* v. *Bowen*, 817 F.2d 865, 869 (D.C. Cir. 1987). In the present case *res judicata* was not raised at the April 12, 1990, hearing before the Board. Indeed, the Board held that reconsideration hearing at its own initiative and thus waived the defense of *res judicata* even if the doctrine applied. *Poulin* v. *Bowen, supra.* Furthermore, when the appellant appealed

from the Board's April 12, 1990, decision the Board filed an answer to the appellant's petition for judicial review and that answer made no mention of a *res judicata* defense.

In sum, we find that there is no substantial evidence to support the Board's decision to deny appellant's application for retirement benefits. We also find that decision, under the circumstances here, to have been arbitrary and capricious. The case, however, was fully developed before the Board and we find that the evidence is so nearly undisputed that fair-minded minds could only conclude that appellant's application should be granted. Therefore, we remand to the circuit court with directions that it remand to the Board with directions that the Board approve appellant's application.

Reversed and remanded.

JENNINGS, C.J., dissents.

PITTMAN, J., not participating.

JOHN E. JENNINGS, Chief Judge, dissenting. If this were a matter of first impression it certainly would seem the fair thing to do to let this officer receive a pension, to the extent that we can glean the circumstances of this case from the record. The problem, however, is that we are an appellate court bound by certain strictures, imposed by statute or decision, which regulate our proper function on appeal. We are not a "knight-errant, roaming at will" with the power to right every wrong, real or imagined. *See* Benjamin N. Cardozo, *The Nature of the Judicial Process* 141 (1921).

In the case at bar the board declined to award disability retirement benefits to the appellant in April 1989. Indeed, the board had no authority to do otherwise since by statute such benefits may not be awarded unless the physician member on the board of trustees certifies that the officer is physically permanently disabled. *See* Ark. Code Ann. § 24-11-423(a)(1). No appeal was taken from the board's decision, nor does there appear to have been a request under the statute for a second evaluation by another physician. In February of 1990 appellant retained counsel who wrote a letter to the board requesting "reconsideration."

As I understand the majority opinion it is the board's refusal

to award pension benefits to the appellant in this "reconsideration" proceeding that the court finds to be arbitrary and capricious and not supported by substantial evidence. In my view the court merely substitutes its judgment for that of the board. This we cannot do. *Cf. Helena-West Helena Sch. Dist.* v. *Davis*, 40 Ark. App. 161, 843 S.W.2d 873 (1992).

Equally troubling is the majority's willingness to explore the record in an attempt to discover error. In *Johnson* v. *State*, 17 Ark. App. 125, 704 S.W.2d 647 (1986), we said:

> On appeal the abstract of the record constitutes the record and the appellate court considers only that which is contained in the abstract. We have often stated that where the appellant's abstract does not contain the testimony on which he bases his argument we will not explore the record for prejudicial error.

The majority's extensive references to the transcript leave no doubt that we are abandoning the rule, at least in this particular case.

For the reasons stated, I respectfully dissent.