Cite as 2024 Ark. App. 221

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV-22-419

| | |
|---|---|
| ARKANSAS LOCAL POLICE AND FIRE RETIREMENT SYSTEM | Opinion Delivered April 3, 2024 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60CV-22-71] |
| V. | |
| MICHAEL PAYNE | HONORABLE TIMOTHY DAVIS FOX, |
| APPELLEE | JUDGE |
| | AFFIRMED |

**BART F. VIRDEN, Judge**

Appellant Arkansas Local Police and Fire Retirement System (LOPFI) appeals the Pulaski County Circuit Court's order reversing a decision by the LOPFI Board of Trustees (the Board) on appellee Michael Payne's application for duty-related disability retirement. The Board granted Payne retirement benefits under the "ordinary duty disability" classification pursuant to Ark. Code Ann. § 24-10-607(d)(1)(C) (Supp. 2023), as amended by Act 72 of 2021, effective April 1, 2021. The circuit court reversed the Board's decision, finding that the 2021 amendatory act did not apply to Payne's 2020 application, and it remanded with instructions to complete Payne's disability retirement benefits in accordance with the applicable statutory provisions in effect when Payne filed his application. LOPFI argues that the circuit court erred in reversing the Board's decision. We affirm the circuit

court's order reversing the Board's decision and remand with instructions to apply the former law.

## I. *Background*

The relevant facts are not disputed. Payne was employed as a police officer with the Sherwood Police Department from 2005 until his retirement in 2021. By virtue of his employment, he was a member of, and contributed a portion of his pay to, LOPFI, a statutorily created public retirement system. *See* Ark. Code Ann. §§ 24-10-101 et seq. (Repl. 2014 and Supp. 2023). On December 28, 2020, after having sustained two separate duty-related back injuries—in 2013 and 2017—he applied for duty-related disability retirement benefits pursuant to Ark. Code Ann. § 24-10-607(c)(1)(A) (Repl. 2014). Both Payne's personal physician and LOPFI's independent physician determined that these on-duty injuries caused Payne to become totally and permanently disabled.[1]

At the time Payne submitted his retirement application in 2020, the defined benefits for duty-related disability retirement under LOPFI's plan provided that "the retirant's annuity amount shall either be equal to sixty-five percent (65%) of the final average salary of the member or shall be equal to the annuity paid to retirants for each year of paid service

---

[1]Medical records show that, following his 2013 injury, Payne underwent back surgery and recovered enough to return to police duty. In 2017, he was injured again on the job and received ongoing treatment. By the fall of 2020, however, Payne's personal physician determined that Payne had reached maximum medical improvement and would not recover enough to return to police duty. LOPFI's physician subsequently conducted an independent medical review in June 2021 and agreed with Payne's physician's determination.

resulting from employment as provided for in § 24-10-602, whichever is greater." Ark. Code Ann. § 24-10-607(d)(2)(B) (Repl. 2014). While Payne's application was still under review, however, the legislature passed Act 72 of 2021, which changed the previously defined benefits for duty-related disability retirement, effective April 1, 2021.[2] The amended statute, in pertinent part, provides as follows:

> (C)(i) An approved duty disability retirement that is effective on or after April 1, 2021, shall be classified as catastrophic duty disability, hazardous duty disability, or ordinary duty disability in accordance with the criteria in the rules for disability retirement established by the board.
>
> . . . .
>
> (iv) An ordinary duty disability annuity shall be equal to the greater of the following:
>
> *(a)* Fifteen percent (15%) of the final average pay of the member; or
>
> *(b)* The annuity paid to a retirant for each year of paid service resulting from employment as provided under § 24-10-602.

Ark. Code Ann. § 24-10-607(d)(1)(C) (Supp. 2023).

On June 30, 2021—six months after he had submitted his application and over two months after Act 72 of 2021 had taken effect—Payne received a letter from LOPFI's executive director confirming that he had been found totally and permanently disabled from his duties and, as a result, was approved for an "ordinary duty disability" retirement with an effective

---

[2]Two months *before* the new law took effect, LOPFI informed Payne of the legislation and stated that "[i]f approved for a duty disability you would fall under Ordinary Duty and your benefit would be calculated as greater of 15% of your final average pay or actual service credit."

date of August 1, 2021. Payne appealed the decision to the Board. At a December 2, 2021 hearing before the Board, Payne contended that LOPFI unlawfully applied Act 72 of 2021 in determining the amount of his benefits because he applied for disability retirement before the effective date of the new law. Payne's attorney made the following argument:

> I think what's being overlooked . . . is how [Payne's] disability payments were determined. And the biggest problem is that he made an application for his retirement before a change in the Statute occurred in April 2021. But prior to that, he would have gotten his 65% in disability. He made his application in 2020. And then, in 2021 is when they made a determination as to how much he was going to get in retirement. And there are cases in Arkansas, specifically on this issue. *McCarty v. Board of Trustees of Little Rock Pension Fund* where they state, specifically, that the benefits become fixed when that Member is vested in the system and the Plan's obligations are fixed at the time when the application for benefits is made. This established that the operative date is the date when his application was made, not the date when LOPFI made a determination on it. That's the real issue here. There's no dispute that he got total disability. The issue is how they made a determination as to what he was going to get paid. That case goes on ~ that *McCarty* case goes on to state that if the Board in 1990, because it's a 1990 case, adopted standards that were different from the standards in 1988, that would be an after the fact process and the Board's decision based on those standards is made upon an unlawful procedure. That's the same issue we have going on here right now. [Payne's] application for retirement was made prior to a change in the law but yet LOPFI applied the change in the law that happened later. And it's clear, under that *McCarty* case, that that's an inappropriate way to determine what his payments would be for his disability plan.

Payne argued, alternatively, that even if the new law applied, he was entitled to the higher disability-benefit amount applicable to the "hazardous duty disability" classification because there was no substantial evidence to support an "ordinary duty disability" classification.[3]

---

[3]The amended statute provides that the annuity for a hazardous duty disability shall be equal to the greater of 65 percent of the final average pay of the member or the annuity

In response, LOPFI argued that the amended statute plainly states that it applies to retirement *decisions* made after April 1, 2021. LOPFI further argued that pursuant to LOPFI Board Rule 16, cumulative injuries and illnesses over a multimonth or multiyear time frame fall under the "ordinary duty disability" classification. LOPFI noted that Payne's two injuries in 2013 and 2017, together with other factors, led to the determination that he had a duty-related disability.

Following the hearing, the Board issued its written findings of fact, conclusions of law, and ordered as follows:

<u>FINDINGS OF FACT</u>

1. Michael Payne applied for reclassification of his awarded duty disability benefit from "ordinary" to "hazardous".

2. The Board found Mr. Payne was advised in February of 2021 that his application was to be handled as an ordinary duty disability and he chose to proceed with his application for a duty disability.

3. A Joint Exhibit of all medical records was submitted and accepted into evidence.

4. Mr. Payne testified in support of his request for reclassification.

5. The Board found that the cumulative effect of Mr. Payne's injuries, combined with his degenerative back issues, fit squarely in the Board's classification as an ordinary duty disability pursuant to Board Rule 16.

<u>CONCLUSIONS OF LAW</u>

1. The applicable statute regarding this disability application and appeal are as follows:

---

paid to a retirant for each year of paid service resulting from employment as provided for in section 24-10-602. Ark. Code Ann. § 24-10-607(d)(1)(C)(iii) (Supp. 2023).

5

Arkansas Code Annotated § 24-10-607(c)(1)(A) and (B)

(A) Any active member who while an active member becomes totally and permanently physically or mentally incapacitated for any suitable duty as an employee as the result of a personal injury or disease that the board finds to have arisen out of and in the course of his or her actual performance of duty as an employee may be retired by the board upon proper application filed with the board by or on behalf of the member or former member.

(B) The employee shall be retired only if, after a medical examination of the member or former member made by or under the direction of a physician or physicians designated by the board, the physician reports to the plan in a manner prescribed by the board that the member or former member is physically or mentally totally incapacitated for the further performance of any suitable duty, that the incapacity will probably be permanent, and that the member or former member should be retired.

2. After evaluating all the evidence submitted to it, including all reports, findings and opinions of the applicant's treating physicians and the report of the Board's independent physician, as well as the testimony of Mr. Payne, the Board determined that the evidence and testimony demonstrated that Mr. Payne's disability was appropriately classified as an ordinary duty disability pursuant to Board Rule 16. Specifically, the Board announced its findings, in public, after the record was closed. The Board held that under the requirements set forth in the above referenced statute and the Rules of the Arkansas Local Police and Fire Retirement System, Mr. Payne's condition did not meet Board Rule requirements for "hazardous" and that the categorization of "ordinary" was appropriate.

3. Through a roll call vote in open session, the Board unanimously denied Mr. Payne's request for a hazardous duty disability. The Board's Ruling is attached hereto as Exhibit A and incorporated herein as though fully set forth word for word.

<u>ORDER</u>

Mr. Payne is awarded an ordinary duty disability retirement.

6

Payne thereafter sought judicial review of the Board's final decision pursuant to the Arkansas Administrative Procedure Act (APA), codified at Ark. Code Ann. §§ 25-15-201 et seq. (Repl. 2014 & Supp. 2023), on the same grounds that he argued before the Board. For relief, he requested that the circuit court reverse or modify LOPFI's final decision and award him the duty-related disability-retirement-benefit amount he would have received under the statute prior to the April 1, 2021 amendment or, alternatively, the amount he would be awarded under the "hazardous duty disability" category.

In response, LOPFI argued that Act 72 of 2021 operates prospectively on its face by applying only to "[a]n approved duty disability retirement that is effective on or after April 1, 2021." LOPFI further maintained that application of the new law did not disturb Payne's vested rights to his disability retirement, noting that as of the April 1, 2021 effective date of the amendatory act, Payne was still working, and LOPFI had not yet determined whether he was permanently and totally disabled. LOPFI contended that, because it approved Payne's retirement with an effective date of August 1, 2021, it lawfully classified his duty disability as "ordinary" for purposes of determining the amount of his benefits pursuant to the amended statute.

On April 12, 2022, the circuit court entered an order reversing and remanding the Board's final decision. The court found that Payne had filed his retirement application on December 28, 2020, and the applicable statute subsequently was changed, effective April 1, 2021. The court concluded that "[i]t was error for [LOPFI] to retroactively apply the 2021

7

statutory changes to the 2020 application" and instructed LOPFI "to complete [Payne's] disability benefits in accordance with the statutory classifications in effect at the time the petition was submitted." LOPFI appealed to this court from the circuit court's April 12, 2022 order.

## II. *Standard of Review*

Review of administrative agency decisions, by both the circuit court and an appellate court, under the APA, is limited in scope. *Bolding v. Ark. Pub. Emps. Ret. Sys.*, 2022 Ark. App. 275, at 6, 646 S.W.3d 696, 700. The APA provides that either the circuit court or the appellate court may reverse or modify an agency's decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h); *see also Ark. Ethics Comm'n v. Weaver*, 2021 Ark. 38, at 4, 617 S.W.3d 680, 683.

Generally, our review is directed not to the decision of the circuit court but rather to the decision of the administrative agency. *Bolding*, 2022 Ark. App. 275, at 6, 646 S.W.3d at 700. Our supreme court, however, has recognized an exception to this general rule applicable to appeals originating from an agency decision involving a constitutional issue. *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, at 4, 383 S.W.3d 69, 72. This is because "an administrative agency lacks the authority to rule on a constitutional argument." *Id.*

Accordingly, while the constitutional argument must be raised before the agency for preservation purposes, we review the decision of the circuit court. *Id.*; *see also Ark. Tobacco Control Bd. v. Sitton*, 357 Ark. 357, 361, 166 S.W.3d 550, 553 (2004) (explaining that "the appeal in this case is from a decision of the circuit court declaring that the USCA is unconstitutional as applied . . . [and] therefore [is] not an appeal from a decision of the ATCB").

### III. *Discussion*

LOPFI challenges the circuit court's order on the grounds that its application of Act 72 of 2021 in determining Payne's disability retirement benefits was neither retrospective nor (1) in violation of state or federal constitutional provisions; (2) in excess of its statutory authority; (3) made upon unlawful procedure; or (3) affected by other error or law. Before we consider this argument, however, we must first address LOPFI's separate argument that Payne failed to preserve the unlawful-application argument for judicial review in the circuit court decision by failing to obtain a ruling on the issue from the Board.

"It is an elementary principle of administrative law that an issue must be raised at the hearing below in order to be raised on appeal." *Bolding*, 2022 Ark. App. 275, at 9, 646 S.W.3d at 701. Here, Payne argued before the Board that application of Act 72 of 2021 impaired his vested contractual rights to the disability retirement benefits assured under the provisions of LOPFI's plan in effect when he filed his application. Although the Board, in its final decision, noted the 2021 legislative amendment, including Payne's prior knowledge thereof, and ultimately applied the amended statute in making its determination regarding

9

Payne's disability retirement benefits, it did not address the argument directly. Nevertheless, even assuming that the Board made no ruling on the argument, we find no merit in LOPFI's preservation challenge.

As Payne points out, the record does not demonstrate that LOPFI raised this preservation challenge in the circuit court. *See, e.g., Ark. Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 330 n.1, 64 S.W.3d 241, 247 n.1 (2001) (noting well-settled rule requiring appellant to raise argument and obtain a ruling below to preserve argument for appeal). Even so, the record is clear that before seeking judicial review in the circuit court, Payne "adequately develop[ed] the constitutional argument before the [Board]." *W.N. v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 346, at 15–16, 552 S.W.3d 483, 492 (restating rule that a constitutional challenge must be raised before the agency to preserve it for the circuit court's consideration). As stated, when presented with an allegation that a statute is unconstitutional as applied, like the present one, our review is directed to the decision of the circuit court because "an administrative agency lacks the authority to decide the issue of the unconstitutionality of a statute." *Sitton*, 357 Ark. at 361–62, 166 S.W.3d at 553 (noting that as-applied constitutional argument had to be raised before the board to preserve it, but the board "rightly declined to decide the issue of constitutionality"). On this record, we hold that Payne did preserve the argument for the circuit court's review.

Finding no merit in LOPFI's preservation challenge, we turn to LOPFI's primary argument. At oral argument, LOPFI did not disagree that Payne has a contractual right to disability retirement benefits created under the plan and that Payne had fulfilled all his

obligations to receive these benefits before the effective date of Act 72 of 2021. LOPFI contends, nevertheless, that the 2021 amendment applies prospectively on its face to "[a]n approved duty disability retirement that is effective on or after April 1, 2021," Ark. Code Ann. § 24-10-607(d)(1)(C)(i) (Supp. 2023), and further asserts that it has no authority to approve an application for disability retirement until its designated physician has reported that "the member is physically or mentally totally incapacitated for the further performance of any suitable duty, that the incapacity will be permanent, and that the member should be retired." Ark. Code Ann. § 24-10-607(c)(1)(A)–(B).

In Payne's case, this did not happen until June 2021–six months after he had submitted his application and after the 2021 amendment had taken effect. According to LOPFI, this was the earliest date it could officially approve Payne's application, which it did, giving him an effective retirement date of August 1, 2021. Because Payne's retirement was effective after April 1, 2021, LOPFI maintains that its application of the new law in determining Payne's disability benefits was prospective and not retrospective. In a similar vein, LOPFI also contends that Payne had only an expectancy interest–and not a vested right–in its calculation of the amount of his annuity until his disability retirement was approved, noting that, under the new "procedure," the disability classification is what determines a retirant's annuity. We disagree.

Our supreme court has held that legislation that operates retroactively to divest previously existing contractual rights and, specifically, rights arising under a public retirement plan based on voluntary employee contributions violates the constitutional

11

prohibition against the impairment of contracts. *See Jones v. Cheney*, 253 Ark. 926, 931, 489 S.W.2d 785, 788 (1973) (citing Ark. Const. art. 2, § 17, and U.S. Const. art. 1, § 10); *see also Pyle v. Webb*, 253 Ark. 940, 944, 489 S.W.2d 796, 798 (1973) (holding former member's right to annuity vested prior to the passage of act that placed a limitation on the annuity, and he could not be deprived of his "contractual benefits"). This is so because a public employee, by accepting the terms and conditions of a law that provides for retirement benefits to participating employees, enters into a contractual relationship with the public entity that passed the law. *Cheney*, 253 Ark. at 931, 489 S.W.2d at 788. Under the relevant terms of such a "contract," the employee is allowed to participate in the retirement plan while employed in his or her public position, and if the employee meets the vesting requirements of the plan, he or she is entitled to receive the plan's prescribed benefits. *Id.*; *see also Robinson v. Taylor*, 342 Ark. 459, 463–64, 29 S.W.3d 691, 693–94 (2000) (distinguishing the retirement plan at issue in *Cheney*, noting "that such a system represents delayed compensation for services rendered in the past due under a contractual obligation inuring to the employee's benefit and is not a gratuitous allowance in which the pensioner has no vested right"). A subsequently enacted law that impairs or divests these assured benefits, therefore, violates the constitutional prohibition against the impairment of contracts.

Accordingly, *Cheney* and its progeny stand for the proposition that one who fulfills the statutory conditions to qualify for a benefit cannot constitutionally be divested of his "vested right" to the benefit. *Cheney*, like this case, involved rights that were clearly defined

in the relevant retirement law. Cheney, a former state official, had met all the requirements under Act 148 of 1965 to receive an annuity, with the exception of being the age at which his benefits would begin. The court held that a change in the service requirement, enacted under Act 167 of 1967, could not constitutionally apply to Cheney because it was clear under the 1965 act that he was assured of his annuity when he reached age sixty-five. The court noted that "Cheney's rights were clearly defined in Act 148 of 1965 and his rights became consummate when he fulfilled the service requirements created by the Act." 253 Ark. at 936, 489 S.W.2d at 791. The court rejected the notion, similar to LOPFI's here, that "chronology should control" to deprive Cheney "of his rights fixed by the 1965 statute—rights to which he was contractually entitled under that act to enjoy when he became 65." *Id.* at 936–37, 489 S.W.2d at 791.

In *McCarty v. Board of Trustees of the Little Rock Police Pension Fund*, 45 Ark. App. 102, 177, 872 S.W.2d 74, 81 (1994), upon which Payne relies, this court applied the supreme court's holding in *Cheney* in the context of the board's decision on an application for disability retirement. McCarty was a Little Rock police officer who, after sustaining a series of on-the-job injuries, applied for disability retirement benefits with the Little Rock Police Pension Fund in 1988. The board of trustees found that McCarty was not disabled and denied her application. The board's decision, however, was based on a standard that the police department had not yet adopted at time of McCarty's application. Under the department standard that was in effect in 1988, McCarty would have been entitled to disability retirement. This court reversed the board's decision, concluding, in part, that

13

because under the applicable statute, police employees, like McCarty, "contribute to the pension by payroll deductions[,]" the board "could not adopt new standards in April of 1990 to apply to the application for retirement benefits which [McCarty] made in 1988." *McCarty*, 45 Ark. App. at 117, 872 S.W.2d at 81.

LOPFI's attempt to distinguish *McCarty* from the present case misses the mark. LOPFI asserts that the newly adopted standard applied in *McCarty* affected a substantive right—whether McCarty was disabled and thus entitled to disability retirement benefits altogether—whereas here, the new law changed only the method for calculating Payne's disability retirement benefit. Payne's benefits were clearly defined in the former statute, and under *Cheney* and its progeny, his "rights became vested" when he fulfilled the requirements created by the provisions of the former statute—that is, he became totally and permanently disabled in the course of his employment duties and submitted a proper application for his benefits—*before* the statute was amended by Act 72 of 2021. *Cheney*, 253 Ark. at 938, 489 S.W.2d at 792. LOPFI's several-months'-long review and the intervening legislative amendment that reduced Payne's expected retirement income, which occurred after his application was filed but before his application was approved, should not work to deprive him of the clearly defined benefits "to which he was contractually entitled under [the former statute]." *Cheney*, 253 Ark. at 936–37, 489 S.W.2d at 791. Accordingly, we cannot say that the circuit court erred in reversing the Board's decision due to LOPFI's erroneous application of the amended statute.

Therefore, we affirm the circuit court's order, reverse the Board's final decision, and remand to the Board with directions to apply the former version of the statute in determining Payne's disability retirement benefits. Having reached this conclusion, we need not address LOPFI's remaining arguments on appeal.

Affirmed.

KLAPPENBACH and WOOD, JJ., agree.

*Richard L. Ramsay*, for appellant.

*Wood Law Firm, P.A.*, by: *Russell A. Wood* and *Paul A. Prater*, for appellee.