ARKANSAS RACING COMMISSION *v.*
EMPRISE CORPORATION AND SOUTHLAND
RACING CORPORATION

6147                                497 S.W. 2d 34

Opinion delivered July 16, 1973

*Spitzberg, Mitchell & Hays,* by: *John P. Gill,* for appellant.

*Nance, Nance & Fleming* and *Wright, Lindsey & Jennings,* for appellees.

CONLEY BYRD, Justice. This is an appeal of the order of the Second Division, Pulaski Circuit Court, reversing an order of the Arkansas Racing Commission. The Commission held a hearing beginning June 14, 1971, which resulted in an order dated July 15, 1971, revoking the franchise of Southland Racing Corporation to conduct dog races at West Memphis, Arkansas, due to Southland's involvement with Emprise Corporation. The Commission

found that Emprise was a principal stockholder of undesirable personal background. Revocation was based upon authority of Ark. Stat. Ann. 84-2823.3(b) (Supp. 1971) which provides:

"The Commission may. . . revoke an existing franchise, if after investigation and hearing it determines that . . . principal stockholder of the . . . holder of a franchise is of undesirable personal background."

On January 11, 1972, the Pulaski Circuit Court, while considering an appeal of the revocation order of the Commission, stayed that order from effect and enjoined the effect thereof "pending final adjudication of this proceeding", and on February 15, 1972, reversed the Commission. The Trial Court concluded that the Commission order was arbitrary, capricious, characterized by abuse of discretion and that the participation of Commissioner Guy Newcomb constituted an error of law. We affirm because the racing commission had no authority to issue a conditional order of revocation and also because Mr. Newcomb was disqualified. A summation of the facts is necessary however to an understanding of the reasons involved.

The order of revocation issued by the Commission is as follows:

"IT IS THEREFORE ORDERED that the franchise of Southland Racing Corporation to conduct greyhound racing in Crittenden County, Arkansas, be and it is hereby revoked.

"IT IS FURTHER ORDERED that this order be suspended until January 14, 1972, and if during said period of suspension, the franchise holder shows by competent evidence that Emprise Corporation has divested itself of all of the capital stock of Southland Racing Corporation in excess of 10% thereof, then this order shall be set aside, held for naught, stricken from the records of the Commission and not be admissible in evidence in any future hearings against Emprise Corporation in this or any other state of the United States. If on or before January 14, 1972, no

such evidence is produced, this order shall, on that date, become effective. The divesting of interest under this order shall mean transfer by sale or otherwise to any person who is not related by blood or marriage to a stockholder, director or officer of Emprise Corporation; and the conditions of which transfer shall not in any manner result in the transferee becoming obligated or indebted to Emprise Corporation or any one of its stockholders, directors or officers, or result in Emprise Corporation or one of its stockholders, directors or officers, being the owner or exercising control over the transferred stock.

"IT IS FURTHER ORDERED that any transfer of 10% or more of the common stock of Southland pursuant to the preceding paragraph shall not become effective until approved by the Commission and all transfers of Emprise stock, pursuant to the preceding paragraph, shall be promptly reported to the Commission by the Secretary of Southland Racing Corporation or its designee in writing."

This order takes on added significance when we consider that by statute a statewide election is required to authorize the Commission to issue a new franchise. Furthermore, Ark. Stat. Ann. § 84-2827 dispels any authority of the Commission to determine who shall be stockholders. Thus as we read the applicable statutes, the authority of the Commission over an existing franchise is limited to an outright revocation or suspension. See Ark. Stat. Ann. § 84-2823.3(b) (Supp. 1971). It no where has authority to control who are or may become stockholders or to revoke a franchise on condition.

The record shows that Southland was conceived in 1955, by Charles Upton who became its president. When the track began to falter in 1956, Emprise Corporation controlled by the Jacobs family, came to its rescue by loaning the track $250,000. For a number of years Emprise owned 15% of the stock of Southland and the Upton family owned 17% of the stock. In 1967, Emprise purchased additional stock raising its ownership to between 45% and 46% of all outstanding stock. At the 1968 stockholders meeting Emprise Corporation elected a majority

of the members of the Board of Directors but immediately thereafter an agreement was reached with the Upton faction whereby Mr. Upton remained as president and business continued as usual. Due to a management dispute, Mr. Upton resigned as president in 1970 and the rumors of Emprises' alleged "Mafia" connections again began to circulate.

Amid this background Commissioner Newcomb was quoted in "The Commercial Appeal" a Memphis, Tennessee newspaper as follows:

"LITTLE ROCK, March 2.—State Racing Commission Chairman Guy Newcomb said Monday he will recommend dissolving the corporation that runs Southland dog tract and creating a new home-owned corporation.

"Mr. Newcomb, of Osceola, said he would bring the idea to the Racing Commission at its next meeting.

" 'This is my own personal idea,' he said Monday. 'But this would be one way we can solve the problems over there once and for all.'

. . .

"He said stock could be sold in Arkansas to buy the Jacobs interest in Southland in an effort to create a track owned and operated by Arkansas people.

" 'It would still mean the state would get the same revenue,' he said, 'But this problem is going to be with us a long time and this is one way we could stop it.' "

The newspaper article was verified by the reporter, John Bennett and not disputed by Commissioner Newcomb. Furthermore, in answer to questions as to his disqualification Mr. Newcomb stated:

"No, I am not of the opinion really that it should be dissolved because—well, unless the evidence here

today presents so. I don't see that you can say that I still think, maybe I do in a sense, unless you all can work things out over there and get your internal mechanism working smoothly."

The problems of bias and prejudice among members of administrative boards have been with the courts since the innovation of bureaucracy. In a number of cases bias and prejudice have been overlooked on "The Rule of Necessity." See *Administrative Law Treatise* § 12.04 by *Kenneth Culp Davis*. The seeming injustice of having to present evidence before biased or prejudiced adjudicating officers or commissioners was recognized by the General Assembly in the adoption of the "Administrative Procedure Act," which provides:

". . . All presiding officers and all officers participating in decisions shall conduct themselves in an impartial manner and may at any time withdraw if they deem themselves disqualified. Any party may file an affidavit of personal bias or disqualification, which shall be ruled on by the agency and granted if timely, sufficient, and filed in good faith." [(Ark. Stat. Ann. § 5-709(b) (Supp. 1971)].

The judicial review of decisions of agencies under the "Administrative Procedure Act" is limited to a determination of whether there is any substantial evidence to support the action of the board or commission, [Ark. Stat. Ann. § 5-713 (h)(5) (Supp. 1971)]—*i.e.* the courts do not evaluate the weight or preponderance of the evidence.

Notwithstanding the provisions of the Administrative Procedure Act, however, the qualification or disqualification of an officer or board member thereunder involves a number of difficult and delicate problems as can be seen from the following quote from § 12.01 of the Administrative Law Treatise by Davis; to-wit:

"The concept of 'bias' has a multiplicity of meanings which shade into each other but which must nevertheless be distinguished if problems of disqualification of de …ing officers are to be solved. One meaning of bias is a preconceived point of view

about issues of law or policy. In this sense, most Americans have a bias for democratic methods, the pre-1937 Supreme Court was thought by many to have had a bias in favor of property interests, and the present Court may have a bias in favor of judicial self-restraint permitting government regulation of economic life. All men who have thought about controversial issues necessarily have biases in this sense. A judge may have a bias on a question of law because he decided the question in a previous judicial opinion; the judge who has the most bias in this sense may be the best judge. Closely related but distinguishable is bias or prejudgment concerning issues of fact about the parties in a particular case; all agree that too much bias in this sense is a ground for disqualification but the problems of what is too much are often difficult. A third kind of bias is often called 'partiality' or 'personal bias' or 'personal prejudice'; these terms signify an attitude for or against a party as distinguished from issues of law or policy. When this kind of bias is strong enough, it is a ground for disqualification. A final kind of bias is 'interest.' A judge who stands to gain or lose by a decision either way—because he owns stock in a corporation or is related to a party or is substantially affected in his personal desires—has an interest of the kind that is a ground for disqualification if it is of sufficient magnitude."

A recent case discussing the disqualification of an officer under the Administrative Procedure Act can be found in *American Cyanamid Company* v. *F. T. C.*, 363 F. 2d 757 (6th Cir. 1966), wherein former counsel of a Senate Subcommittee headed by Senator Estes Kefauver was held disqualified as a Federal Trade Commissioner to hear charges that pharmaceutical manufacturers had violated the Federal Trade Act through the sale and distribution of certain "wonder drugs". In so holding the court stated and relied upon the basic rule set forth in *In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 as follows:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our sys-

tem of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law. Tumey v. State of Ohio, 273, U.S. 510, 532, 47 S. Ct. 437, 444, 71 L. Ed. 749.

Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' "

Commissioner Newcomb is not disqualified under the Administrative Procedure Act because he expressed the philosophy that dog racing should be home-owned nor because he appeared before a legislative committee in furtherance of that philosophy for it was not the intent and purpose of the Administrative Procedure Act to man agencies with political eunuchs. However when, under the historical background, Commissioner Newcomb's philosophy of state ownership is coupled with his references to the "problems over there" and his reference to "your internal mechanism working smoothly" one can easily conclude that his appearance of fairness in the determination of the factual issues could be subject to some reasonable suspicion by those in charge of and acting on behalf of Emprise Corporation that he had already taken sides with the Upton family in the management dispute.

Since the underlying philosophy of the Administrative Procedure Act is that fact finding bodies should not only be fair but appear to be fair, it follows that an officer or board member is disqualified at anytime "there may be reasonable suspicion of unfairness." It follows that Commissioner Newcomb was disqualified.

The Arkansas Racing Commission entered a second revocation order on July 24, 1972; that order is not now under review here, however appellees urge that this appeal is now moot on the grounds that the more recent order supersedes the order of July 15, 1971, and constitutes an election by the Commission to waive that prior order.

The effect of the order of the Pulaski Circuit Court, entered January 11, 1972, stayed the Commission's original revocation order, enjoined its enforcement and effectively nullified it pending final disposition of this cause. Therefore, for all practical purposes, that original revocation order did not exist on July 24, 1972, and the Commission was possessed of continuing authority to regulate Southland and to issue racing dates. It was not deprived of authority to hold subsequent hearings and to enter the order of July 24, 1972. Accordingly, the revocation order of that date does not supersede the original revocation order, does not constitute an election by the Commission to waive the prior order and this appeal is not rendered moot.

Affirmed.

Special Justice Herman Hamilton, Jr., concurs in so far as the opinion holds Commissioner Newcomb was disqualified.

FOGLEMAN, J., not participating.

HARRIS, C.J., and HOLT, J., concur in the affirmance on the basis that the Commission exceeded its authority in the order entered.