The ARKANSAS APPRAISER LICENSING AND
CERTIFICATION BOARD *v.* Ralph W. BILES

94-824                                    895 S.W.2d 901

Supreme Court of Arkansas
Opinion delivered March 27, 1995

*Winston Bryant*, Att'y Gen., by: *M. Wade Hodge*, Asst. Att'y Gen., for appellant.

*Hobbs, Lewis, Mitchell, Garnett, Naramore & Strause, P.A.*, by: *Ronald G. Naramore*, for appellee.

DAVID NEWBERN, Justice. Ralph W. Biles, the appellee, is a general appraiser certified by the Arkansas Appraiser Licensing and Certification Board. The Board placed Mr. Biles on proba-

tion for six months because it found an appraisal he had performed was deficient and in violation of its regulations. Mr. Biles appealed to the Garland Circuit Court which overturned the Board's decision, declaring it to be contrary to law and fact, arbitrary and capricious, an abuse of the Board's discretion, and not supported by substantial evidence. The Trial Court did not discuss the facts in its order or give reasons for its conclusions. We hold there was substantial evidence in support of the Board's decision. We reverse the Trial Court's decision and reinstate that of the Board.

Mr. Biles prepared an appraisal report on a parcel of land consisting of approximately 4.56 acres in Hot Springs. He was hired by the owner of the land to appraise it, apparently because of a purchase interest expressed by the United States Postal Service. The Board received a complaint concerning the appraisal and initiated an investigation. As a result, Mr. Biles was charged with violating the Uniform Standards of Professional Appraisal Practice (the Standards) which are incorporated by reference in the Board's regulations.

The Board conducted a hearing. Richard Stephens testified as an expert that he found several parts of the appraisal to be in violation of the Standards. Specifically, the appraisal did not comply with the Standards relating to analysis of the highest and best use or the market valuation, and the certification of the appraisal was inadequate. He also testified the appraisal violated the Standards due to the use of 1980 statistics despite availability of 1990 census statistics, and failure to substantiate a $70,000 projected cost for dirt removal. Finally, he found the appraisal so confusing and incomplete that he could not use the appraisal to determine the land's value.

Mr. Biles also testified at the hearing. When questioned by his attorney about an unexplained figure used in the report to adjust the value on the basis of the time it would take to sell it, he stated, "Well, we could have put two or three or four pages in the appraisal explaining all of this." Later, during cross-examination, he added "we just didn't put one [explanation] in this appraisal."

Also on cross-examination, he was asked why he employed 1980 population statistics when the 1990 statistics were avail-

able. He first responded that "those were the things that we were in the process of upgrading," apparently referring to an information system used in his office. Mr. Biles then stated he did not feel it was relevant to the value of the property because he talked about the increase in traffic flow for twenty years and over the past two years. He concluded by assuring he now includes the 1990 census information in his reports.

Mr. Biles was also asked about the estimate of $70,000 for removal of dirt and rock from the property. He answered that he personally got that estimate from the dirt contractor in writing and that it might have been logical to include such information.

The Board found the reasoning which supported the analysis, opinions, and conclusions in the appraisal was incomplete, that the test for the highest and best use was not addressed, and that the method applied in arriving at value was inadequate. The order concluded that the incompleteness of the appraisal constituted a violation of the Standards.

### Any substantial evidence

The violations found by the Board were based on the Board's adoption in its Regulation I(O) of the Uniform Standards of Professional Appraisal and on the grounds for disciplinary action found in Regulation I(P). Section I(P)(1) provides that one ground for disciplinary action is the "Violation of any provision of the Arkansas Appraiser Licensing and Certification Act of 1991 or any of these regulations." Section I(P)(4) lists other grounds which include "Any actions demonstrating un-trustworthiness, incompetence, dishonesty, gross negligence, material misrepresentation, fraud or unethical conduct in any dealings subject to the Act or these regulations."

The Board made six findings of which the last four, numbered three through six, were specific findings of fact in support of its conclusion that the Standards were violated. The third finding was that "the reasoning that supports the analysis, opinions, and conclusions of the appraisal report is incomplete." According to Standards rule 1-1(b), "In developing a real property appraisal, an appraiser must . . . not commit a substantial error of omission or commission that significantly affects an appraisal." In response to the allegation about use of the dated population

statistics Mr. Biles admitted he was "in the process of upgrading" to the 1990 statistics but also testified to the effect that he had included the 1980 statistics as it was required. Another omission was that of the written estimate from the dirt removal contractor. That omission was a violation of Standard 2-2(h) and was compounded, according to Mr. Stephens, by the failure to list the contractor's name as a source for the information as required by Standard 4-3(h).

Finding number four was that, while a discussion of the highest and best use was presented in the appraisal report, it did not address the tests for highest and best use. This finding was based on the testimony of Mr. Stephens who stated that the highest and best use was discussed but that the criteria or tests for determining the highest and best use, to the extent they were included, were placed in the report in such a way as to be confusing. Inclusion of the tests is required by Standard 1-3(a).

The Board's fifth finding was that, while the appraisal report stated that the cost approach and the income capitalization approach would not be used, both approaches were discussed in an inconclusive and incomplete manner, resulting in confusion to the reader of the report, thus violating Standard 1-1(c).

The sixth finding was that the methodology used in determining valuation was inadequate.

■ Generally, when reviewing administrative decisions, the Court reviews the entire record to determine whether there is any substantial evidence to support the administrative agency's decision, whether it was arbitrary and capricious, and whether there was an abuse of discretion. *In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992); *Arkansas ABC Bd.* v. *King*, 275 Ark. 308, 629 S.W.2d 288 (1982).

■ To determine whether a decision is supported by substantial evidence, the Court reviews the whole record to ascertain if it is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wright* v. *Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992); *Livingston* v. *Arkansas State Medical Bd.*, 288 Ark. 1, 701 S.W.2d 361 (1986); *Partlow* v. *Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d. 23 (1980).

█ To establish an absence of substantial evidence to support the decision it must be demonstrated that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusions. *Beverly Enters.-Ark., Inc.* v. *Arkansas Health Servs.*, 308 Ark. 221, 824 S.W.2d 363 (1992). Substantial evidence is valid, legal, and persuasive evidence. *Wright* v. *Arkansas State Plant Bd., supra.*

Administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures to determine and analyze underlying legal issues affecting their agencies, and this recognition accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Wright* v. *Arkansas State Plant Bd., supra; First Nat'l Bank* v. *Arkansas State Bank Comm'r*, 301 Ark. 1, 781 S.W.2d 744 (1989).

█ In view of the specific testimony of Mr. Stephens and Mr. Biles' candid admissions that items not explained or included in his report should have been explained or included, we cannot say the Board's findings and conclusions are not supported by any substantial evidence. Nor have we any reason to hold that the Board's decision was arbitrary or capricious or contrary to law.

Reversed.