William A. WACASER *v.* INSURANCE COMMISSIONER

95-143                                        900 S.W.2d 191

Supreme Court of Arkansas
Opinion delivered June 19, 1995

144

*Lowber Hendricks*, for appellant.

*J. Denham*, for appellee.

DAVID NEWBERN, Justice. William Wacaser, the appellant, has been an insurance salesman licensed in Arkansas. The Insurance Commission received a number of complaints about Mr. Wacaser's sales practices and initiated an investigation. The investigation concluded in a hearing before the appellee, Lee Douglas, the Insurance Commissioner. As a result of the hearing, the Commissioner concluded Mr. Wacaser had violated the Insurance Code in seven instances, and he revoked Mr. Wacaser's license. The Circuit Court affirmed the decision as do we.

The violations found by the Commissioner were of a number of provisions of the Insurance Code. Ark Code Ann. §§ 23-66-201 through 23-66-408 (Repl. 1994). Mr. Wacaser contests most of the Commissioner's conclusions as not being based upon substantial evidence. We need not address all of the arguments made on each of the violations found. It is enough for us to point up several instances in which the Commissioner's conclusions were clearly justified.

### 1. Standard of review

■ Generally, when reviewing an administrative agency decision, we review the entire record to determine whether there is any substantial evidence to support the decision, whether it was arbitrary and capricious, and whether there was an abuse of discretion. *Arkansas Appraiser Lic. & Cert. Bd.* v. *Biles*, 320 Ark. 110, 895 S.W.2d 901 (1995); *In re Sugarloaf Mining Co.*, 310 Ark. 772, 840 S.W.2d 172 (1992).

■ We review the whole record to see if the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Arkansas Appraiser Lic. & Cert. Bd.* v. *Biles, supra; Wright* v. *Arkansas State Plant Bd.*, 311 Ark. 125, 842 S.W.2d 42 (1992).

■ Administrative agencies are better equipped than courts, by specialization, insight through experience, and more flexible procedures, to determine and analyze underlying legal issues affecting their agencies. That accounts for the limited scope of judicial review of administrative action and the refusal of the court to substitute its judgment and discretion for that of the administrative agency. *Arkansas Appraiser Lic. & Cert. Bd.* v. *Biles, supra; Wright* v. *Arkansas State Plant Bd., supra.*

■    To establish an absence of substantial evidence it must be demonstrated that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusions. *Arkansas Appraiser Lic. & Cert. Bd.* v. *Biles, supra.*

### 2. Rebating

The "paying or allowing, or giving, or offering to pay, allow, or give, directly or indirectly, as inducement to the insurance contract . . . any valuable consideration or inducement whatever not specified in the contract" constitutes a "rebate" and thus an unfair trade practice according to § 23-66-206(8).

Upon a finding that an agent has engaged in rebating, the Commissioner may, within his discretion, revoke the license of an agent who knew or reasonably should have known of the violation. § 23-66-210(a)(2).

At the beginning of the hearing the following colloquy occurred:

> MR. HENDRICKS [Counsel for Mr. Wacaser]: Mr. Commissioner I'm not going to bore you with an opening statement. I might save you a little bit of time in that I don't think there's any question because the proof will show that Mr. Wacaser committed an act or acts which would be considered rebates within the meaning of the code. And as a matter of fact, he's guilty of that and I just don't understand the necessity for taking up your time and having to hear testimony on that. We admit that.
>
> MR. DOUGLAS: Okay. On the particular issue on the rebating, there are several allegations here.
>
> MR. HENDRICKS: The allegations go to show, Mr. Commissioner, that from time to time [Mr. Wacaser] would pay part of policyholder's association fee for the policyholder in order to write the business. He's freely admitted to that in the other hearing. There's no dispute about it.

Mr. Wacaser now argues that no cease and desist order, as required by § 23-66-210(a), was entered by the Commissioner and that there is no evidence that he knew that the payment by him

of a portion of "association fees" owed by his client constituted rebating.

Mr. Wacaser's admission, through his counsel's statement, of giving rebates "within the meaning of the code" could not have been clearer. Later in the hearing he testified he did not know that what he was doing constituted rebating. No authority is offered, however, to the effect that the Commissioner was required to believe that testimony. In view of the clarity of § 23-66-206(8) and Mr. Wacaser's earlier plea of "guilty," offered to "save time" which might otherwise have been devoted to presenting evidence on the rebating issue, we can hardly say the evidence on that issue was insufficient or that the Commissioner was not justified in finding that it had been admitted.

Mr. Wacaser offered no defense at the hearing concerning the requirement of a cease and desist order, and we will not consider that argument. *See Alcoholic Beverage Control Div. v. Barnett*, 285 Ark. 189, 685 S.W.2d 511 (1985).

### 3. Harassment

Ms. Lynette Hardin testified she met Mr. Wacaser at her place of temporary employment, Service Merchandise. He later called and told her she was "going to go to work for him" in his insurance business at his home. She went out with him to dinner and to lunch and a movie the following day. She declined further invitations, but Mr. Wacaser persisted in calling her, and, she was told, calling and speaking to coworkers at Service Merchandise "hundreds of times." She was also informed that he told persons with whom he spoke at Service Merchandise that he was an insurance agent who had a "policy on" her and had lost some information about her he needed. Mr. Wacaser also called the office of a physician for whom she worked, seeking information about her. He called another former employer and said Ms. Hardin had applied for a job with him and he was seeking information about her.

Ms. Hardin notified Mr. Wacaser that she wanted nothing further to do with him and changed to an unlisted telephone number, but Mr. Wacaser sent mail to her address and left items on her car. She felt she was being "stalked" and reported Mr. Wacaser to the prosecutor. He was convicted of a misdemeanor for harass-

ing communications. *See* Ark. Code Ann. § 5-71-209 (Repl. 1993).

Another instance of harassment was the subject of testimony by Mike Boyce. Mr. Boyce's wife had discussed insurance with Mr. Wacaser who then sought to discuss it with Mr. Boyce who apparently did not want to deal with it while he was working at his grocery store and asked Mr. Wacaser not to call him there. Mr. Boyce testified that Mr. Wacaser "went off his rocker" and made a threat of physical violence. He testified that a couple of months later he found all the locks at his business had been "super glued." Later on the day he discovered the problem with the locks he received a call from a person who said, "You little smart aleck, I'll get you again." He identified the voice as that of Mr. Wacaser.

The Commissioner may revoke any license issued by him if, after a hearing, he finds "(1) Any cause for which issuance of the license could have been refused had it then existed and been known to the commissioner; (2) Violation of or noncompliance with any applicable provision of the laws of this state, . . . ." § 23-64-218(a). Mr. Wacaser does not contest the fact that he was convicted of harassing communications with Ms. Hardin, and we have no doubt that no license would have issued to Mr. Wacaser had the incidents with Ms. Hardin and Mr. Boyce been a part of his reputation when application for the license was made. A criterion for issuance of an agent's license is a "good personal and business reputation." § 23-64-204(a)(4).

■ The evidence on these matters was substantial.

### 4. Misrepresentation

There was substantial evidence with respect to at least one instance of misrepresentation to a client. Mr. Wacaser sold health insurance to Mr. and Mrs. Keener who testified he told them they would have immediate dental coverage. Mrs. Keener was informed upon calling the issuing insurance company that the policy had to be in effect for one year before the dental coverage became effective. The Keeners received an apology and a refund of their premium from the company. Mr. Keener testified that Mr. Wacaser thereafter called his home and accused him of "insurance scamming" and threatened to "make it hard" for him to obtain insurance.

■ Misrepresentation with respect to an application for insurance is a violation of the Code, § 23-66-305, and constitutes a ground for revocation of an agent's license, § 23-60-108. The evidence of misrepresentation to the Keeners was substantial.

## 5. Fair hearing

Mr. Wacaser contends he did not receive a hearing free from the appearance of impropriety because of the participation of Mr. Ronald Sheffield, Deputy Commissioner. He testified he had a physical altercation with Mr. Sheffield at a golf driving range prior to the investigation into Mr. Wacaser's activities as an insurance agent and thus that Mr. Sheffield should not have had any part in the matter. Mr. Sheffield flatly denied that any such altercation occurred and denied that he had ever met Mr. Wacaser prior to his conducting an informal hearing, at the behest of a Department investigator, as part of the investigation of Mr. Wacaser.

Mr. Sheffield did not participate further in Mr. Wacaser's case after learning that a freedom of information request had been made by Mr. Wacaser with respect to an incident in which Mr. Sheffield had been accused of misconduct, not a part of the alleged altercation with Mr. Wacaser, at a municipal golf course.

■ A fair trial by a fair tribunal is a basic requirement of due process. This rule applies to administrative agencies as well as to courts. *See Sexton* v. *Ark. Supreme Ct. Comm. on Profess. Conduct*, 299 Ark. 439, 774 S.W.2d 114 (1989); *See also Arkansas Elec. Energy Consumers* v. *Ark. Pub. Serv. Comm'n*, 35 Ark. App. 47, 813 S.W.2d 263 (1991). Administrative agency adjudications are also subject to the "appearance of bias" standard applicable to judges. *Acme Brick Co.* v. *Missouri Pac. R.R.*, 307 Ark. 363, 821 S.W.2d 7 (1991). As the underlying philosophy of the Administrative Procedures Act is that fact finding bodies should not only be fair but appear to be fair, it follows that an officer or board member is disqualified at any time there may be reasonable suspicion of unfairness. *Ark. Racing Comm'n* v. *Emprise Corp.*, 254 Ark. 975, 497 S.W.2d 34 (1973).

■ Mr. Wacaser testified he felt only two of the complaints against him — none of the ones discussed above — with

the Insurance Department had been prompted by someone at the Department. In view of that statement and the fact that Mr. Sheffield had only a limited participation in the revocation hearing prior to his withdrawal, the hearing's appearance of impartiality was not compromised. We note also the Commissioner's argument that, although Mr. Wacaser was vigorously represented by counsel, no mention of Mr. Sheffield's participation was made until the waning hours of a six-months long investigation.

Affirmed.