## MID-SOUTH ROAD BUILDERS, Inc. *v.* ARKANSAS CONTRACTORS LICENSING BOARD

96-447                                          946 S.W.2d 649

Supreme Court of Arkansas
Opinion delivered May 27, 1997

*Bowden Law Firm*, by: *David O. Bowden*; and *Walker, Campbell, Ivory, Dunklin & Davis*, by: *Larry G. Dunklin*, for appellant.

*Williams & Anderson*, by: *Leon Holmes*; and *Winston Bryant*, Att'y Gen., by: *M. Wade Hodge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Mid-South Road Builders, Inc., appeals the judgment of the Pulaski County Circuit Court affirming the denial of its license renewal by Appellee Arkansas Contractors Licensing Board. This is an administrative review pursuant to Ark. Code Ann. § 17-25-312 (Repl. 1996), which provides that all appeals shall follow the provisions of the Administrative Procedures Act, Ark. Code Ann. §§ 25-15-201— 214 (Repl. 1996). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(17)(vi) (as amended by *per curiam* July 15, 1996). On appeal, Mid-South argues that it was denied procedural and substantive due process in a license-renewal hearing before the Board and that there is insufficient evidence to support the revocation of its contracting license. We find no error and affirm.

## I.  Facts and Procedural History

Mid-South first applied for a license with the Arkansas Contractors Licensing Board on June 10, 1994. On July 22, 1994, the application was reviewed, but due to numerous questions, it was given further consideration at the August 12, 1994 board meeting, during which Mid-South was allowed to present any evidence in support of the application. The license was denied due to the Board's inability to verify information on the application. Mid-South filed an action in circuit court for review of the Board's denial, which was later dismissed when a second application was filed on August 16, 1994. The Board then granted a license to Mid-South on August 26, 1994.

In August of 1995, Mid-South applied for license renewal. Notice was sent by the Board to Mid-South on or about October 11, 1995, apprising Mid-South that a hearing would be conducted on their license-renewal application based on the allegation that Mid-South provided false information in obtaining its license. On October 27, 1995, a hearing was scheduled on the allegations of false information, but Mid-South objected to the notice on the ground that it did not sufficiently apprise Mid-South of the particular allegations against it. In response to the objection, the Board reset the hearing to December 1, 1995, and issued an amended notice of hearing.

On December 1, 1995, a hearing was conducted, during which the Board voted against granting Mid-South's renewal on the bases of several false statements contained in the license-renewal application. The Board presented one witness and Mid-South presented six witnesses. During the hearing, the Board presented evidence of a variety of false statements on Mid-South's license-renewal application. Mid-South appealed to Pulaski County Circuit Court, which affirmed the decision of the Board to deny the license renewal. This appeal followed.

## II. Standard of Review

Administrative decisions should be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Arkansas State Highway & Transp. Dep't v. Kidder,* 326 Ark. 595, 933 S.W.2d 794 (1996); *Wacaser v. Insurance Comm'r,* 321 Ark. 143, 900 S.W.2d 191 (1995). To set an agency decision aside as arbitrary and capricious, an appellant must demonstrate that the decision was made without consideration and with a disregard of the facts. *ABC Home Health of Ark., Inc. v. Arkansas Health Servs. Comm'n,* 326 Ark. 573, 932 S.W.2d 331 (1996). We review the entire record to establish whether the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wacaser,* 321 Ark. 143, 900 S.W.2d 191; *Arkansas Appraiser Licensing & Cert. Bd. v. Biles,* 320 Ark. 110, 895 S.W.2d 901 (1995). An administrative agency, like a jury, is free to believe or disbelieve any witness and, on review, the evidence is given its strongest probative force to support the administrative ruling. *Arkansas Contractors Licensing Bd. v. Butler Constr. Co., Inc.,* 295 Ark. 223, 748 S.W.2d 129 (1988); *Arkansas Health Planning & Dev. Agency v. Hot Spring County Mem'l Hosp.,* 291 Ark. 186, 723 S.W.2d 363 (1987). A court may not reverse a decision of an agency if there is substantial evidence to support that decision. *Butler Constr. Co.,* 295 Ark. 223, 748 S.W.2d 129. The appellant has the burden of proving an absence of substantial evidence. *Brimer v. Arkansas Contractors Licensing Bd.,* 312 Ark. 401, 849 S.W.2d 948 (1993); *Arkansas Health Planning & Dev. Agency,* 291 Ark. 186, 723 S.W.2d 363.

Pursuant to section 17-25-312 of the contractors regulations, any party aggrieved by a decision of the Arkansas Contractors Licensing Board has the right to seek review pursuant to the provisions of the Administrative Procedure Act ("A.P.A."). Section 25-15-212(a)—(b) provide that a person who considers himself injured by a final act of an agency is entitled to a review of the action in circuit court. Additionally, section 25-15-212(f) provides in pertinent part:

> If, before the date set for hearing, application is made to the court for leave to present additional evidence and the court finds that the evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon any conditions which may be just.

### III. Denial of Procedural and Substantive Due Process

For its first point for reversal, Mid–South presents numerous allegations in support of its contention that it was denied both procedural and substantive due process in the various board meetings and hearings below. We find no merit to any of the allegations.

Mid–South argues that it was denied due process because the alleged false statements made on the June 1994 application were mentioned in the December 1, 1995 hearing. Mid–South asserts that the doctrine of *res judicata* precluded the Board from using any falsifications on the 1994 application against Mid–South during the application–renewal process in 1995. Mid–South argues that it was improper for the Board to consider its June 1994 license application in consideration of its license renewal at the December 1, 1995 hearing. The abstract reflects that Mid–South objected to the 1994 application's admission as an exhibit on the basis that it was irrelevant because it had already been considered and denied. On appeal, however, Mid–South argues that the admission of the 1994 application was barred by the doctrine of *res judicata*. Hence, we do not reach the merits of this point, as an appellant may not change the grounds for his

objection on appeal. *Hinson v. Eaton*, 322 Ark. 331, 908 S.W.2d 646 (1995).

■ Even if this argument had been properly preserved for appeal, we would nonetheless affirm the actions of the Board, as it may reconsider its own decisions, especially where there is evidence of fraud or misrepresentations, in order to correct any previous error in granting a license. *See, e.g., North Hills Mem'l Gardens v. Simpson*, 238 Ark. 184, 381 S.W.2d 462 (1964); *Earp v. Benton Fire Dep't*, 52 Ark. App. 66, 914 S.W.2d 781 (1996); *McCarty v. Board of Trustees*, 45 Ark. App. 102, 872 S.W.2d 74 (1994). The ability of the Board to reconsider its previous decisions is particularly necessary in a case such as this, where it was through the Board's investigation of the 1995 renewal application that it was discovered that there were false statements contained in the 1994 application.

■ Mid-South next contends that the circuit court's failure to call for an evidentiary hearing was clearly erroneous as there were several procedural irregularities at the Board level concerning off-the-record proceedings and Mid-South's lack of ability to cross-examine a witness at the July 1994 hearing. Mid-South's argument as to this issue must fail because Mid-South never requested an evidentiary hearing nor made application to the circuit court for such pursuant to section 25-15-212(f) for leave to present additional evidence. Hence, Mid-South may not raise this issue for the first time on appeal. *Butler Constr. Co.*, 295 Ark. 223, 748 S.W.2d 129.

Mid-South next argues that the Board failed to provide proper notice of the allegations so that Mid-South could properly have prepared its defense. As previously noted, Mid-South objected to the inadequacy of the first notice, and, in response, the Board reset the hearing and sent a detailed amended notice. At the December 1, 1995 hearing, Mid-South again objected to the inadequacy of the amended notice, asserting that it had not properly been informed of the allegations and that it had not been provided with discovery of all the documents relied upon by the Board. In response to Mid-South's objection at the December 1995 hearing, the hearing officer asked if Mid-South desired an

additional continuance in the matter, to which Mid-South responded that it did not want a continuance. On appeal, Mid-South contends that had the notice been adequate and had it obtained the documents not provided in discovery prior to the hearing, it would have been better prepared to defend the allegations.

■ We are not persuaded by Mid-South's argument on this point because it was given the opportunity to correct any alleged discovery or notice violations by moving for a continuance in order to better prepare its defense. Given that Mid-South did not find the alleged discovery violations egregious enough to warrant its request for a continuance, we cannot see where it has demonstrated any prejudice on appeal. This court had repeatedly stated that we will not reverse absent a demonstration of prejudice. *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996); *Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995).

■ Lastly, Mid-South argues that the Board's members were biased against it and, as such, it was error for the circuit court not to conduct an evidentiary hearing. Again, Mid-South's argument must fail because there is no evidence that it ever requested the circuit court for leave to present additional evidence on this allegation. We further note Mid-South's counsel was allowed to *voir dire* the Board members as to any bias they may have had against Mid-South. With one Board member having previously recused, Mid-South's counsel then announced that he was comfortable with the remainder of the Board and was ready to proceed. Thus, Mid-South has effectively waived any challenge to the Board based upon its pronounced satisfaction with the composition of the Board during the December 1995 hearing.

## IV. Sufficient Evidence

For its second point for reversal, Mid-South argues that the Board's findings were not supported by substantial evidence and were not based upon matters officially noticed. The circuit court's findings are clearly supported by the record.

Mid–South listed Jerry Malone on the application as the architect or engineer. When contacted by an investigator, however, he identified himself as Jerry Jackson and stated that he was not an engineer. The Board found that the accounts-receivable statement submitted with the renewal application did not match the audit papers from Mid–South's accountants and Mark Gregory Jackson, Mid–South's CEO, later admitted to altering those statements. The company's president's social security number provided on a bond application by Mid–South was found to be that of Mark Gregory Jackson's nine-year-old son, Vincent Jackson. Meanwhile, the "Vincent Jackson" represented to be the president of Mid–South, admitted that he had little to do with the company and did not know whether he had an ownership interest. Mark Gregory Jackson represented to the Board that the same Vincent Jackson owned all the equipment used by Mid–South on August 12, 1994. Again, the elder Vincent Jackson stated that he had nothing to do with the company and knew nothing about Mid–South. At the same hearing, Mark Gregory Jackson contradicted himself by stating that Mid–South owned the equipment. Additionally, the evidence revealed that 50,000 shares of Mid–South stock had been transferred from Vera Williams to Mark Jackson Jr. on October 7, 1994, but the renewal application submitted in August of 1995 did not provide any information about such change in ownership. Finally, there was evidence introduced during the December 1995 hearing showing liens against Mid–South with an agreed order dated June 7, 1995, granting the U.S. Government a security interest on all equipment of Mid–South. This, too, was not revealed on the license-renewal application.

■ Based upon the foregoing evidence, we conclude that the Board's decision was supported by substantial evidence and was not arbitrary nor capricious and could not be characterized as an abuse of discretion.

Affirmed.

GLAZE and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur with the majority but write to further expand on the majority's analysis of Mid–South's claims that it was denied due process

because the alleged false statements made on the June 1994 application were mentioned in the December 1, 1995 hearing.

The June 1994 application was initially reviewed on July 22, 1994. It was again considered on August 12, 1994, at which time Mid-South was allowed to present evidence in support of the application. The Board then voted to deny the June 1994 application. A second application was filed on August 16, 1994. The Board granted a license to Mid-South on August 26, 1994.

Certain representations were made by Mid-South in both the June 1994 application and the August 1994 application. Specifically, Mid-South represented in both applications that Vincent Jackson was the president of the corporation and that "a princip[al]" of Mid-South owned the equipment and leased it to the corporation. Mid-South also submitted the same financial statement for the year ending May 31, 1994, with both applications.

The Board may reconsider its own decisions, especially where there is evidence of fraud or misrepresentations, in order to correct any previous error in granting a license. *See e.g., North Hills Mem'l Gardens v. Simpson*, 238 Ark. 184, 381 S.W.2d 462 (1964); *Earp v. Benton Fire Dep't*, 52 Ark. App. 66, 914 S.W.2d 781 (1996); *McCarty v. Board of Trustees*, 45 Ark. App. 102, 872 S.W.2d 74 (1994). Similarly, Ark. Code Ann. § 17-25-308 (Repl. 1995) provides:

> *The Board shall have the power to revoke the certificate of license of any contractor licensed under this chapter who is found guilty of any fraud or deceit in obtaining a license* or for aiding or abetting any contractor or person to violate the provisions of this chapter or for gross negligence, incompetence, or misconduct in the conduct of the contractor's business.

(Emphasis added.)

The Board was entitled to reconsider its August 1994 decision to grant a license to Mid-South by reviewing Mid-South's August 1994 application. The August 1994 application repeated many of the same representations previously made in the June

1994 application. Thus, the Board's review of the June 1994 application was merely cumulative and not an abuse of discretion.

In conclusion, I join in the majority opinion, but also concur for the above reasons.

GLAZE, J., joins in the concurrence.