H.T. HACKNEY COMPANY *v.* Charlie DAVIS, Director of
the Arkansas Tobacco Control Board, and the
Arkansas Tobacco Control Board

03-62                                               120 S.W.3d 79

Supreme Court of Arkansas
Opinion delivered June 26, 2003

*Charles R. Singleton,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Connie Carroll,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal from an order of the Pulaski County Circuit Court affirming a decision of the Arkansas Tobacco Control Board (Board), fining the appellant, H.T. Hackney Co. (Hackney), $28,000 and suspending its license to distribute tobacco products for six months. Hackney asserts three points on appeal: (1) that the circuit court erred in affirming the Board's decision which was made in violation of the Board's statutory authority; (2) that the circuit court erred in failing to reverse the Board's decision on the basis of agency estoppel; and (3) that the circuit court erred in failing to reverse the Board's decision in that it was not supported by substantial evidence. We affirm.

The testimony at the hearing before the Board revealed the following facts. On July 28, 2000, Hackney made a decision to stop offering rebates to Arkansas retailers for the purchase of cigarettes in order to comply with Ark. Code Ann. § 4-75-708(b) (Repl. 2001). Almost two months later, on September 22, 2000, Maurice Gilmore, an auditor investigator for the Board, contacted Hackney's general manager at its Paducah, Kentucky warehouse, Steve Butler, to commence an audit of the company. Two days later, Mr. Butler contacted Mr. Gilmore and admitted to him that Hackney had been paying rebates to Arkansas retailers up until July 28, 2000. At some point later, but prior to the audit, Mr. Gilmore spoke with appellee Charlie Davis, Director of the Board, who told Gilmore that he would make a "positive recommendation" to the Board regarding a penalty if Hackney completely cooperated during the audit and assisted in preparing cases against Arkansas retailers who accepted the rebates.[1]

Mr. Gilmore completed Hackney's audit in October 2000 and prepared a report of his investigation which included a worksheet detailing the rebate amounts given to each retailer from December 1999 to July 2000. During the time Hackney was cooperating with the Board's investigation, Mr. Gilmore "firmed up the offer [of settlement]" that would be recommended to the Board if Hackney fully cooperated. The settlement offer was that the Board's staff would recommend a seven-day suspension of Hackney's license and a $500 fine. Mr. Gilmore testified at the hearing before the Board that he "at all times" told Hackney that it was within the discretion of the Board to make the final decision. Following the testimony of Allen Smith, a Hackney employee, at one of the hearings, Mr. Gilmore told Mr. Butler that there had been some "bad testimony," and that although the recommendation would still be made to the Board, the Board could "vote up or down on it, vote to reject it or accept it."

On March 16, 2001, Mr. Davis sent a letter of an offer of settlement to Hackney. The offer stated that Hackney was being

---

[1] Hackney assisted with the cases against the Arkansas retailers which accepted rebates by sending an employee on two separate occasions to hearings against two of the thirty retailers.

charged with violating Ark. Code Ann. § 4-75-708(b) (Repl. 2001), for offering rebates on cigarette purchases from Arkansas cigarette and tobacco retailers between December 1999 and July 2000. The offer further stated:

> Pursuant to Act 1591 of 1999, the range of penalties for the charge as alleged includes fines not to exceed one thousand dollars ($1,000.00) for each violation, and/or the suspension or the revocation of your wholesale/retail permit(s). At the present time, the Director of the Tobacco Control Board has recommended to the Board a fine in the amount of five hundred dollars ($500.00) and a seven day suspension of your wholesale cigarette and tobacco permits. The dates of your permits' suspensions will be determined by the Director and you will be notified later regarding these dates.

The offer then notified Hackney that it had the right to a hearing before the Board on the alleged charges and that if a hearing was held, "the Tobacco Control Board may dismiss the charge, or increase, or adopt the penalty recommended by the Director."

The offer letter also included a form by which Hackney was to respond to the offer. The letter instructed Hackney to return the form to the Board's office on or before April 16, 2001, and stated that if Hackney decided to request a hearing, it should check the appropriate box and return the form by the date stated; however, if Hackney wished to "accept the penalty offered," Hackney should check that appropriate box and return the form by the same date. The letter then provided:

> In the event that you request a board hearing in this matter by the deadline, you will be notified of the date and time set for the board hearing. Should you choose to waive a hearing, an order will be entered on 04/19/2001, which will be served by regular mail within five (5) working days of that date.

The form contained the following choices and language:

> I have received the notification of charge(s) lodged against the permit(s) held by me as contained in the Offer of Settlement. In response to the Offer, I am electing the following option (check one):

_____ I waive my right to a hearing and accept the penalty offered. I have enclosed a **check or money order** for the amount due.

> **NOTE:** I understand that an Order will be entered in this matter on 04/19/2001.

_____ I request a hearing in this matter before the Board Members of the Tobacco Control Board.

> **NOTE:** Notice of the date and time of the hearing will be provided to me after the request for a hearing has been received by your agency.

On April 2, 2001, Butler, on Hackney's behalf, returned the form which was attached to the letter offer of settlement. The form indicated that Hackney waived its right to a hearing and accepted the penalty being offered. It further indicated that a check or money order in the amount due was also enclosed. Hackney submitted a check in the amount of $500.00 made payable to the Arkansas Tobacco Control Board.

Despite Hackney's acceptance of the offer of settlement, Maurice Gilmore returned both the offer of settlement and check in payment of the fine to Hackney by a letter dated April 26, 2001, which stated:

> As per our conversation on April 19, 2001, enclosed is the Offer of Settlement for Case #2001-201 and check in payment of the fine. The Arkansas Tobacco Control Board did not accept the offer and the case will be set for a hearing. You will receive a Notice and Order of Hearing from the Attorney General's Office shortly setting the time and date of the hearing.

Hackney later received an order stating that the Board had determined that sufficient evidence existed to conduct a hearing regarding whether Hackney was in violation of Ark. Code Ann. § 4-75-708(a-b). The order directed Hackney to appear before the Board for a hearing on May 17, 2001.[2]

---

[2] The order actually stated that the hearing would be held on May 17, 2000, but that was obviously a typographical error.

The hearing before the Board actually took place on July 19, 2001. At that time, the Board's attorney presented testimony from Maurice Gilmore regarding his investigation. He testified that "at all times" he told Hackney that "it was within the discretion of the Board to make the final decision." On cross-examination, Mr. Gilmore stated that this was the only instance of which he was aware where an offer of settlement had been sent out but was not accepted by the Board.

Hackney then presented its witnesses including Dean Ballinger, Hackney's Vice-President of Operations; Steve Butler, general manager of Hackney's Paducah warehouse; and William Sansom, Hackney's Chairman and CEO. It was their testimony that Hackney was a good company that wished to comply with the law and had discontinued its custom of rebating in Arkansas upon discovering the Board's intention to actively pursue rebaters. Their testimony further revealed that because it had ceased rebating, the company had lost thirty to thirty-four percent of its market share.

On August 29, 2001, the Board issued its Findings of Fact, Conclusions of Law, and Order. The order stated that the Board's staff had established that Hackney had offered and given rebates to twenty-eight separate establishments, which received a total of $47,883.02. The Board further found that Hackney admitted violating § 4-75-708 by participating in a rebating program in Arkansas and concluded that Hackney had "violated Ark. Code Ann. § 4-75-708 by paying rebates to 28 retail locations." The Board then ordered:

> Pursuant to Ark. Code Ann. § 26-57-256(a)(5), the Board is authorized to revoke the Respondent's permit and to fine the Respondent One Thousand Dollars for each and every time that it rebated. Instead, the Board hereby orders that the Wholesale Permit and license of the Respondent be suspended for a period of six (6) months and orders the Respondent to pay a fine of One Thousand Dollars per retail location to which the respondent rebated in the amount of Twenty-eight Thousand Dollars.

> The Respondent may seek judicial review of the Board's decision either in the circuit court of the county where he resides or in Pulaski County if filed within thirty (30) days receipt of this Order. No further notice of the Board's findings will be sent and the Board's action will become final unless a stay is issued by the

circuit court in accordance with the Administrative Procedures Act. All appeals or reviews must be in accordance with the Administrative Procedures Act, Ark. Code Ann. § 25-12-201 *et seq.*

On October 2, 2001, Hackney filed its petition for judicial review in the Pulaski County Circuit Court. Hackney alleged that the Board's order was arbitrary, capricious, and characterized by an abuse of discretion; violated constitutional and statutory provisions; and was not supported by substantial evidence. It further asserted that the doctrine of agency estoppel should apply to the case. Following a hearing held on July 15, 2002, the circuit court issued an order affirming the Board's decision on September 25, 2002. In its order, the circuit court found that the Board made the necessary findings of fact to support its decision; the Board's decision was supported by substantial evidence, and was not arbitrary, capricious, or an abuse of discretion; and the Board was not estopped from issuing a punishment for Hackney's violation in that "(a) the Tobacco Control Board neither intended that its conduct in making an Offer of Settlement be acted on nor did this conduct create a right in petitioner to believe it is so intended and (b) petitioner did not rely on the Offer of Settlement as a final resolution of the matter." Hackney now appeals. Although the appellant has couched its arguments on appeal in terms of error by the circuit court, this court, when reviewing a case under the Administrative Procedures Act, does not review the circuit court's decision but reviews the decision of the administrative agency. *See Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002).

## I.  Statutory Authority

Hackney first contends that Ark. Code Ann. § 26-57-223 (Supp. 2001), originally gave the Director of the Department of Finance and Administration the power to suspend or revoke licenses for violations of the Arkansas Tobacco Products Tax Act (Act 546 of 1977) and that Act 1337 of 1997 amended that statute to endow the Director of the Tobacco Control Board with those powers. Section 26-57-223 provides, in pertinent part:

> (a) All permits and licenses issued under this subchapter may be suspended or revoked by the Director of the Arkansas Tobacco Control Board for any violation of this subchapter or the regulations pertaining thereto.

Ark. Code Ann. § 26-57-223(a) (Supp. 2001). Hackney further points to Ark. Code Ann. § 26-57-257 (Supp. 2001), and contends that pursuant to these statutes, Mr. Davis, the Director of the Tobacco Control Board, alone had the authority to sanction Hackney for its violations. Section 26-57-257(p) provides:

> (p) The director shall have other powers, functions, and duties pertaining to the issuance, suspension, and revocation of the permits and licenses enumerated in § 26-57-219 which previously were granted to the Director of the Department of Finance and Administration, except the authority to regulate manufacturers, and which are specifically delegated to the department by this subchapter.

Ark. Code Ann. § 26-57-257(p) (Supp. 2001). Hackney submits that it was the General Assembly's intent that the Director would possess the primary and initial authority to sanction wholesalers, and that the Director "clearly has co-existent authority with the Board to sanction wholesalers by the use of either license suspension or revocation."

The Board responds that Hackney has failed to preserve this issue regarding the Director's authority for appeal by failing to present it to the Board. As to the merits of Hackney's claim, the Board asserts that Ark. Code Ann. § 26-57-256 (Supp. 2001), specifically authorizes the Board to suspend and revoke licenses and to conduct public hearings concerning possible violations. In addition, the Board claims that § 26-57-256 authorizes it to punish violators.

We agree with the Board that Hackney has failed to preserve this argument for appeal. This court has steadfastly maintained that "[i]t is essential to judicial review under the Arkansas Administrative Procedure Act that issues must be raised before the administrative agency appealed from or they will not be addressed by this court." *City of Benton v. Arkansas Soil & Water Conserv. Comm'n*, 345 Ark. 249, 259, 45 S.W.3d 805, 812 (2001) (quoting

*Wright v. Arkansas State Plant Bd.*, 311 Ark. 125, 132, 842 S.W.2d 42, 46 (1992)). A review of the record in this case reveals that Hackney never asserted during its hearing before the Board that only the Director had the authority to settle such matters and that the matter was improperly before the Board. Accordingly, this issue is not preserved for our review.

## II. Agency Estoppel

For its second point, Hackney urges that due to Mr. Davis's position as director and the fact that he was the senior employee of the agency, Hackney reasonably assumed that he had full authority to act on behalf of the agency and its Board. Hackney claims that the doctrine of agency estoppel should be applied, regardless of the fact that it is not a commonly-applied remedy in Arkansas. Hackney further claims that this case presents all of the elements necessary for the doctrine to be applied.[3]

The Board responds that Hackney has misplaced its reliance on the doctrine of agency estoppel. It contends that the offer of settlement clearly stated that the Director was making a "recommendation" to the Board. The Board asserts that it was also clear that the Director never intended for Hackney to rely on his offer and that this was conveyed to the company. The Board concludes that Hackney cannot establish the necessary elements required to establish agency estoppel.

We hold that this point also is not preserved for our review. During Hackney's counsel's closing argument before the Board, counsel cited to this court's decision in *Foote's Dixie Dandy, Inc. v. McHenry*, 270 Ark. 816, 607 S.W.2d 323 (1980), for the proposition that when a director of an agency takes action on behalf of the agency, the agency should abide by that action and honor it. Counsel further argued that the case said "agency deliberation should be governed by fairness," and that:

---

[3] Hackney also asserts within its second point on appeal that because it had already admitted to the violations, which became a part of the record, the Board effectively denied Hackney procedural due process and any opportunity to defend itself. However, Hackney also failed to raise this argument before the Board or to obtain a ruling on it. Accordingly, we will not address it.

that's all we're asking for today. We're asking for fairness. They were made an offer by this agency, they accepted the offer, they relied on the offer, they have put their business in jeopardy by providing this witness, testifying as retailers. They turned over reams and reams of stuff voluntarily and they tried to make it as easy on this agency as they can and be as cooperative as they can, and we would just ask you to take that all into consideration when you make the decision. Thank you.

■   To the extent it can be said that Hackney raised the issue of agency estoppel in its hearing before the Board, and we have doubts that it did, the issue was not ruled on by the Board, nor did Hackney attempt to obtain a ruling. This court has held that in order to obtain appellate review of an issue, the appellant must obtain a ruling on the argument from the agency. *See Arkansas Contractors Licensing Bd. v. Pegasus Renovation Co.*, 347 Ark. 320, 64 S.W.3d 241 (2001); *Arkansas State Racing Comm'n v. Wayne Ward, Inc.*, 346 Ark. 371, 57 S.W.3d 198 (2001). Because Hackney failed to obtain any ruling on this argument, either orally at the hearing before the Board, or included within the Board's order, we are precluded from reviewing it.

### III.   Substantial Evidence

For its final point, Hackney argues that the Board's rejection of the offer of settlement and its imposition of sanctions on Hackney were arbitrary and capricious actions and constituted an abuse of discretion. Hackney further contends that these actions were contrary to the established policy and procedure of the Board. Hackney also asserts that in addition to the lack of a statute or regulation on which the Board could have relied, there was no evidence justifying a fine of $28,000 or a six-month suspension. There is nothing in the record, according to Hackney, to support the wide disparity between the sanctions offered by Davis and those imposed by the Board. Instead, it claims, the record demonstrates that the Board's action was arbitrary, totally unprecedented, and without any rational basis.

The Board replies that the record reflects Hackney's admission that it unlawfully paid rebates to twenty-eight Arkansas retail establishments from December 1999 to July 2000. The Board

points to evidence presented at the hearing that Hackney dispersed at least 147 monthly rebate checks totaling $47,883.02. The Board concludes that while Hackney may not like the penalty imposed by the Board, the Board's decision was based upon sufficient evidence and was neither arbitrary nor capricious.

■ ■ We agree with the Board. Ark. Code Ann. § 25-15-212(h) (Repl. 2002), provides that this court may reverse or modify an administrative agency's decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the agency's statutory authority;
> (3) Made upon unlawful procedure;
> (4) Affected by other error or law;
> (5) Not supported by substantial evidence of record; or
> (6) Arbitrary, capricious, or characterized by abuse of discretion.

This court has often repeated its standard of review for administrative decisions:

> Administrative decisions should be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Arkansas State Highway & Transp. Dep't v. Kidder*, 326 Ark. 595, 933 S.W.2d 794 (1996); *Wacaser v. Insurance Comm'r*, 321 Ark. 143, 900 S.W.2d 191 (1995). To set an agency decision aside as arbitrary and capricious, an appellant must demonstrate that the decision was made without consideration and with a disregard of the facts. *ABC Home Health of Ark., Inc. v. Arkansas Health Servs. Comm'n*, 326 Ark. 573, 932 S.W.2d 331 (1996). We review the entire record to establish whether the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wacaser*, 321 Ark. 143, 900 S.W.2d 191; *Arkansas Appraiser Licensing & Cert. Bd. v. Biles*, 320 Ark. 110, 895 S.W.2d 901 (1995). An administrative agency, like a jury, is free to believe or disbelieve any witness and, on review, the evidence is given its strongest probative force to support the administrative ruling. *Arkansas Contractors Licensing Bd. v. Butler Constr. Co., Inc.*, 295 Ark. 223, 748 S.W.2d 129 (1988); *Arkansas Health Planning & Dev. Agency v. Hot Spring County Mem'l Hosp.*, 291 Ark.

186, 723 S.W.2d 363 (1987). A court may not reverse a decision of an agency if there is substantial evidence to support that decision. *Butler Constr. Co.*, 295 Ark. 223, 748 S.W.2d 129. The appellant has the burden of proving an absence of substantial evidence. *Brimer v. Arkansas Contractors Licensing Bd.*, 312 Ark. 401, 849 S.W.2d 948 (1993). *Arkansas Health Planning & Dev. Agency*, 291 Ark. 186, 723 S.W.2d 363.

*Mid-South Road Builders, Inc. v. Arkansas Contractors Licensing Bd.*, 328 Ark. 630, 633, 946 S.W.2d 649, 651 (1997). We have further held that to establish a lack of substantial evidence, an appellant must demonstrate that the proof before the administrative board was so nearly undisputed that fair-minded persons could not reach its conclusions. *See Arkansas State Plant Bd. v. Bullock*, 345 Ark. 373, 48 S.W.3d 516 (2001). The question on review is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made. *See Arkansas State Racing Comm'n v. Wayne Ward, Inc., supra.*

A review of the record in the instant case reveals that there is substantial evidence to support the Board's finding of a violation and the sanctions it imposed on Hackney. Mr. Gilmore testified at the hearing that Hackney had paid twenty-eight retailers rebates from December 1999 until July 2000. The Board also introduced into evidence, without objection by Hackney, Mr. Gilmore's investigation report and a packet of materials reflecting the retail establishments that were paid rebates and in what amount. The investigation findings reflect that "Hackney paid rebates to 28 different locations during the period [of December 1999 to July 2000]." It further reveals that the "total rebate paid from December 1999 to July 2000 was $47,883.02." Additionally, as the Board correctly points out in its brief, Hackney's employees admitted to offering and paying rebates to Arkansas retailers up until July 2000 when it stopped the practice on its own accord. Mr. Butler, Hackney's employee, also testified that Hackney had paid rebates in Arkansas for about three to four years. He admitted that during the time Hackney was giving out rebates, it had received letters from the Board that rebates were illegal, and it knew that rebates were against the law. Finally, Mr. Sansom, Hackney's Chairman and CEO, testified that Hackney had matched rebates to protect its market share.

■ Section 4-75-708(b) prohibits wholesalers and retailers from giving rebates in price in connection with the sale of cigarettes, with the intent of injuring competitors or destroying or lessening competition:

> (b) It shall be unlawful for any wholesaler or retailer, with intent to injure competitors or destroy or substantially lessen competition, to offer a rebate in price, to give a rebate in price, to offer a concession of any kind, or to give a concession of any kind or nature whatsoever in connection with the sale of cigarettes.

Ark. Code Ann. § 4-75-708(b) (Repl. 2001). We hold that based on the evidence set out above, there was substantial evidence that Hackney violated § 4-75-708(b).

■ As for the sanction imposed on Hackney, § 26-57-256(a)(5) clearly permits the Board to conduct hearings regarding any permit or license in violation of the Unfair Cigarette Sales Act. *See* Ark. Code Ann. § 26-57-256(a)(5) (Pamph. No. 3, Mar. 2003). That act is codified at Ark. Code Ann. § 4-75-701 *et seq.* and encompasses § 4-75-708. *See* Ark. Code Ann. §§ 4-75-701 and 708 (Repl. 2001). Section 26-57-256(a)(5) permits the Board to suspend a permit or license and levy a civil penalty of up to $1000 for each violation of the Act.[4] *See* Ark. Code Ann. § 26-5-256(a)(5) (Pamph. No. 3, Mar. 2003). Because the evidence established that Hackney had paid rebates to at least twenty-eight Arkansas retail establishments, it was not arbitrary or capricious for the Board to find twenty-eight separate violations, resulting in a $28,000 fine, and to order a suspension of six months.

Affirmed.

CORBIN, J., not participating.

---

[4] We note that Ark. Code Ann. § 4-75-708(d) (Repl. 2001), provides that should a wholesaler or retailer violate the provisions of the section, it would be guilty of a misdemeanor and "be punishable by a fine of not more than five hundred dollars ($500)." Ark. Code Ann. § 4-75-708(d) (Repl. 2001). However, § 26-57-256(a)(5) permits the levy of a civil penalty not to exceed $1000 for such a violation. Although not challenged by the appellant, it appears that the Board's levy of $1000 per violation was correct in that this was a civil penalty and not a criminal prosecution, which, under Ark. Code Ann. § 26-57-256(c), the Board would not have authority to prosecute.