2010 Ark. 40

**LANDMARK NOVELTIES, INC., Appellant,**

v.

**ARKANSAS STATE BOARD OF PHARMACY, Appellee.**

No. 08–543.

Supreme Court of Arkansas.

Jan. 28, 2010.

Wright, Lindsey & Jennings LLP, by: N.M. Norton, Bettina E. Brownstein, and Troy A. Price, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Erika Gee, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice.

Appellant Landmark Novelties, Inc., appeals from an order of the Pulaski County Circuit Court affirming a decision of Appellee Arkansas State Board of Pharmacy to suspend Landmark's license to sell List 1 chemicals for a period of three years and to impose a $175,000 civil penalty. These penalties were a consequence of the board's findings that Landmark had violated Ark.Code Ann. § 5–64–1006 (Repl. 2005) and the board's regulation 08–02 by failing to report suspicious transactions involving List 1 chemicals and by storing List 1 chemicals in an unlicensed and inappropriately equipped facility. For reversal, Landmark contends that it was denied due process because section 5–64–1006 and its supporting regulations are impermissibly vague as applied and that the board's decision was arbitrary, capricious, and not supported by substantial evidence. This appeal requires interpretation of the Arkansas Constitution; therefore, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(1) and (b) (2009). We find that neither argument for reversal has merit and affirm the circuit court's order.

*I. Regulatory Framework*

Landmark describes itself as a foreign corporation with its principal place of business in Quincy, Illinois, engaged in the business of merchandising specialty items such as greeting cards, work gloves, driving maps, cigarette lighters, energy pills, and over-the-counter medications to convenience stores and other retail outlets in thirteen states. Landmark is licensed by the board as a wholesale distributor of List 1 chemicals and is consequently required by statute to report suspicious orders of certain List 1 chemicals to the board. Ark.Code Ann. § 5–64–1006(a).

Pseudo ephedrine, in addition to having a legitimate use as an active ingredient in over-the-counter allergy and cold medications, is also a List 1 chemical that the board found to be in great demand as an ingredient used in the illicit manufacture of methamphetamine, a controlled substance. In an attempt to protect the citizens of Arkansas from the harmful effects of methamphetamine abuse and from exposure to illicit laboratories used for the manufacture of methamphetamine, the General Assembly enacted legislation requiring the sale of pseudoephedrine, ephedrine, and other List 1 chemicals in a suspicious transaction to be reported in writing to the board. Ark.Code Ann. § 5–64–1006. Section 5–64–1006(c)(1) defines a reportable "suspicious transaction" as one whose circumstances would lead a reasonable person to believe that the substance is likely to be used for the purpose of unlawfully manufacturing a controlled substance based on four factors: the amount involved, the method of payment, the method of delivery, and past dealings with the person acquiring the substance. Ark. Code Ann. § 5–64–1006(c)(1)(A)–(D). In addition, section 5–64–1006(c)(2) establishes a clear rule that cash or money order transactions of more than $200 are "suspicious transactions."

In addition to setting out a statutory definition of "suspicious transaction," section 5–64–1006(d)(1) directs the board to adopt criteria for determining whether a transaction is suspicious. In response, the board promulgated regulation 08–02–0008. 070–00–008 Ark.Code R. 08–02–0008 (Weil 2009). Thus, in addition to the four statutory factors enumerated in section 5–64–1006(c)(1), regulation 08–02–0008 sets forth twenty-five additional factors for its licensees to consider in determining whether, in "their best judgment," a transaction is suspicious. Among others, those twenty-five factors include such things as customers who do not seem to know industry practice or who fail to provide reasons for an order at variance with accepted legitimate industry practice; a new customer who does not seem to know federal or state government regulations; customers who want predominantly or only regulated chemicals; customers who want multiple regulated or surveillance list products, particularly if in contrast to customary use and practice; a customer who is vague or resists providing information about the firm's address, telephone number, and reason for seeking that chemical; an established customer who deviates from previous orders or ordering methods; and a customer who requests unusual methods of delivery or routes of shipment or who provides unusual shipping, labeling, or packaging instructions.

Finally, with respect to the regulatory framework that Landmark challenges on this appeal, we note that the failure to comply with the reporting requirements of section 5–64–1006 is a Class A misdemeanor, and that the board is authorized to impose a civil penalty not to exceed $10,000 per violation. Ark.Code Ann. § 5–64–1006(b), (d)(2).

## II. Procedural History

The board's action in this case began with an investigation into whether Landmark was properly reporting suspicious orders of pseudoephedrine pursuant to section 5–64–1006 and regulation 08–02–0008. The board issued a written order with findings of fact and conclusions of law on September 10, 2004.

In its written order, the board found that specifically, single-ingredient 60 mg pseudoephedrine is highly desired in the illicit manufacturing of methamphetamine and that Landmark sold primarily Max Brand 60 mg single-ingredient pseudoephedrine to its customers, which included primarily convenience stores and some truck stops, but also other types of "non-traditional" outlets that do not generally sell over-the-counter pharmaceutical products. The board found that Landmark failed to report any of its sales of pseudoephedrine to the board as a suspicious order. The board further found that for over two years during 2001 through 2003, Landmark maintained a storage facility for List 1 chemicals without a license and without the proper alarm system and temperature and humidity controls.

Based on these findings of fact, the board concluded Landmark had violated section 5–64–1006, regulation 08–02–0002(a), regulation 08–02–0006(b), regulation 08–02–0006(c), and regulation 08–02–0008(a)(8), by failing to report suspicious orders of pseudoephedrine and by maintaining an unlicensed and improperly maintained storage facility for List 1 chemicals. As previously stated, the board suspended Landmark's license for a three-year period, and ordered a civil penalty of $175,000 to be paid at the conclusion of the suspension.

Landmark, pursuant to the Arkansas Administrative Procedure Act (AAPA), specifically Ark.Code Ann. § 25–15–212 (Repl.2002), filed a petition for review in circuit court, arguing (1) that the board's application of the statute and regulation

violated its rights of due process under article 2, section 8 of the Arkansas Constitution, and (2) that the board's decision was arbitrary, capricious, and not supported by substantial evidence. After a hearing on the petition, the circuit court affirmed the board, holding that its decision was supported by substantial evidence and was not arbitrary or capricious. Furthermore, the circuit court concluded that the board's enforcement of the statute and regulation satisfied due process under article 2, section 8. This appeal followed.[1]

## III. Due Process—Vagueness as Applied

Landmark's first point on appeal is that section 5-64-1006 and the board's regulation 08-02-0008 are impermissibly vague as applied to Landmark and therefore unenforceable under the Arkansas constitutional guarantee of due process of law.

### A. Standard of Review

In an appeal of a decision of an administrative agency under the AAPA, specifically section 25-15-212, this court reviews the decision of the agency rather than the decision of the circuit court. *H.T. Hackney, Co. v. Davis,* 353 Ark. 797, 120 S.W.3d 79 (2003). However, as evidenced by this court's decision in *Arkansas Tobacco Control Bd. v. Sitton,* 357 Ark. 357, 166 S.W.3d 550 (2004), when presented with an

allegation that a statute or regulation is unconstitutional, this court must review the decision of the circuit court because an administrative agency lacks the authority to rule on a constitutional argument. *Id.;* see also *AT & T Commc'ns of the Sw. v. Ark. Pub. Serv. Comm'n,* 344 Ark. 188, 40 S.W.3d 273 (2001). Therefore, in an appeal originating from an agency decision yet involving a constitutional challenge, the constitutional challenge must be raised before the agency in order to preserve it for the circuit court's consideration. *Sitton,* 357 Ark. 357, 166 S.W.3d 550.

Here, Landmark raised its due-process challenge at the hearing before the board and again at the circuit court's hearing. Therefore, the issue was preserved for consideration by the circuit court, and the issue now presented for our review on appeal is whether the circuit court erred in ruling that section 5-64-1006 and its supporting regulations as applied by the board to Landmark satisfied the requirements of due process under article 2, section 8 of the Arkansas Constitution. *See Sitton,* 357 Ark. 357, 166 S.W.3d 550.

### B. Vagueness Standard

It is well settled that a law is unconstitutionally vague under due-process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited, and it is so vague and stan-

---

1. Landmark first filed an appeal with the Arkansas Court of Appeals, reiterating the arguments it advanced in its petition for review. The court of appeals ordered correction of the record and rebriefing by Landmark because the record was out of sequence, and Appellant failed to abstract the constitutional objections it raised at the administrative hearing. *Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy,* 2009 Ark. App. 165, 2009 WL 624758 (unpublished).

This court subsequently assumed jurisdiction of the appeal but was unable to address the merits because Landmark excepted from the contents of the record on appeal "the transcript of the motion argument herein," which referred to the hearing held before the circuit court in which the constitutional objections were raised. *Landmark Novelties, Inc. v. Ark. State Bd. of Pharmacy,* 2009 Ark. 417, 2009 WL 2971692 (per curiam). Consequently, this court ordered a supplemental record and substituted brief. *Id.* Landmark has now presented us with a transcript and abstract of the circuit court's hearing, matters that are essential to our understanding of the questions presented on appeal, *see* Ark. Sup. Ct. R. 4-2(a)(5) (2009); and we proceed with the merits of Landmark's appeal.

dardless that it allows for arbitrary and discriminatory enforcement. *Craft v. City of Fort Smith,* 335 Ark. 417, 984 S.W.2d 22 (1998). In contrast, a statute is constitutional if its language conveys sufficient warning when measured by common understanding and practice. *Sitton,* 357 Ark. 357, 166 S.W.3d 550. The subject matter of the challenged law determines how stringently the vagueness test will be applied. *Craft,* 335 Ark. 417, 984 S.W.2d 22. For instance, if the challenged law infringes upon a fundamental right, such as liberty or free speech, a more stringent vagueness test is applied. *Id.* In contrast, if the law merely regulates business activity, a less stringent analysis is applied and more flexibility is allowed. *Id.*

■ In this case, Landmark brings a challenge that section 5–64–1006 and supporting regulation 08–02–0008 are void for vagueness as applied to Landmark. The board contends that the challenged statute regulates a business activity and therefore a less stringent analysis should be applied allowing for more flexibility. Landmark replies that because section 5–64–1006₈ requires licensees "to identify other persons for a government list of the suspicious," the statute has more to do with criminal law enforcement than with regulating business activity, and therefore due process of law requires that stringent scrutiny be applied. Landmark also points out that when a civil statute imposes sanctions that are "penal in nature," the statute is subject to a stricter vagueness review. *See Advance Pharm., Inc. v. United States,* 391 F.3d 377 (2d Cir.2004).

Section 5–64–1006 is codified in the criminal code and, although not imposed in this case, violations can be prosecuted as a Class A misdemeanor. The statute also authorizes civil penalties of up to $10,000 per violation. We need not here decide whether section 5–64–1006 is subject to the stricter vagueness review, because even assuming arguendo we made such a decision, Landmark's vagueness challenge would fail.

## C. Due Process—Vagueness Analysis

■ With this vagueness standard in mind, and assuming without deciding that a more stringent review is warranted, we now turn to the statute and supporting regulations at issue and decide the issue of whether "suspicious transaction" is unconstitutionally vague as applied by the board to Landmark. The statute at issue, specifically section 5–64–1006(c)(1), clearly defines a reportable "suspicious transaction" in terms of four factors to be considered in the context of a reasonable person's beliefs. In addition, section 5–64–1006(c)(2) establishes a clear rule that cash or money order transactions of more than $200 are "suspicious transactions." │₉Furthermore, regulation 08–02–0008 sets forth twenty-five additional factors for its licensees to consider in determining whether, in "their best judgment," a transaction is suspicious.

Landmark contends that the board's finding that Landmark failed to report suspicious transactions was "based on shifting, uncertain, and undefined standards." In support of this contention, Landmark argues that the application of these vague standards resulted in a fine against Landmark despite the statute having been applied in a manner that failed to "give a person of ordinary intelligence fair notice of what is prohibited," as required by *Sitton,* 357 Ark. 357, 362, 166 S.W.3d 550, 553.

In support of its argument that these criteria are vague, Landmark relies heavily on *Sitton,* a case in which this court held that a provision of the Unfair Cigarette Sales Act was unconstitutionally vague because it allowed trade discounts but prohibited rebates, where the term "trade

discount" was not defined and was therefore capable of subjective interpretation by the agency there at issue, the Tobacco Control Board. In contrast to *Sitton,* the statute at issue in the present case defines the term "suspicious transaction." In addition, the supporting regulation enumerates some twenty-five additional criteria to be used in determining whether the conduct at issue meets the statutory definition. The present case, with its defined terms and lists of criteria for consideration, is therefore in marked contrast to *Sitton* where the prohibited conduct was wholly undefined. *Sitton* in no way supports Landmark's claim that the term "suspicious transaction" is void for vagueness as applied.

In addition to the *Sitton* case, Landmark raises several other arguments in support of its vagueness claim. First, Landmark argues that the board's ability to base its findings on only one factor or on multiple factors renders the statute and regulation vague. Landmark makes much of the testimony of Rusty McSpadden, the board's investigator, that he interpreted the regulation to mean that only one factor could trigger the requirement to report a suspicious transaction. Landmark then also argues that because the regulation does not state a specific number of factors that must exist before a transaction amounts to a "suspicious transaction," the regulation is vague. Finally, Landmark argues that the board's reliance on the predominancy factor stated in regulation 08–02–0008(8) is inconsistent with the four factors enumerated in section 5–64–1006.

We have considered each of these arguments carefully, and conclude that they are without merit. First, we note that the board stated in its order that the circumstances of the targeted transactions would lead a reasonable person to believe that the substance was likely used for an un-lawful purpose based upon the four factors set forth in the statute and other circumstances of past dealings with customers that Landmark's agents knew or should have known. In addition, the board's order stated that the transactions involved customers who bought predominantly or only listed chemicals. Thus, it is clear that, regardless of McSpadden's testimony, the board did not base its decision on the existence of only one factor. Second, we are persuaded by the following reasoning of the Second Circuit Court of Appeal in its conclusion that the federal scheme similar to the one at issue here was not vague:

Similarly unconvincing is defendants' vagueness challenge to [21 U.S.C.] § 830(b)(1)(A)'s reporting requirement with respect to "any other circumstance that the regulated person believes may indicate that the listed chemical will be used in violation of [the Controlled Substances Act]." *While this language is certainly broad, its application is limited to what "the regulated person believes." Such a scienter requirement generally saves a statute from unconstitutional vagueness. See United States v. Curcio,* 712 F.2d 1532, 1543 (2d Cir. 1983) (Friendly, J.); *cf. Colautti v. Franklin,* 439 U.S. 379, 395, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979) (and cases cited therein) (recognizing that "the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*").

*Advance Pharm., Inc.,* 391 F.3d at 397–98 (emphasis added).

Even when applying the more stringent scrutiny to the vagueness standard, we conclude that the challenged statute and supporting regulation are specific and sufficient to have put Landmark on notice that it should have reported suspicious transactions with its customers to the

board. Section 5–64–1006 sets forth a specific and detailed definition of the term "suspicious transaction." In addition, the supporting regulation provides over twenty-five additional, specific criteria for the licensees to use in determining in their "best judgment" what may or may not meet the definition of a suspicious transaction. We simply cannot say that this statute and its supporting regulation, when directing Landmark to exercise its best judgment, are vague or standardless or that a person of ordinary intelligence would not have had fair notice of what constituted a suspicious transaction. Although perhaps broad in scope, the statute and regulation are clear and specific enough to provide a person of ordinary intelligence fair notice that he or she was required to report to the Board when his or her customers were likely to be using List 1 chemicals to illegally manufacture a controlled substance. This is especially true in this case where Landmark, as a DEA licensee, was also |₁₂subject to the similar federal reporting requirements. Landmark therefore had sufficient warning on how to determine a suspicious transaction based on common understanding and practice.

 All statutes are presumed constitutional and this court resolves all doubts in favor of constitutionality. *Sitton*, 357 Ark. 357, 166 S.W.3d 550. The party challenging a statute's constitutionality has the burden of proving that the act is unconstitutional. *Id.* When considering the validity of a rule or regulation, this court gives the same presumption of validity it would give to a statute. *Id.* Landmark has failed to carry its burden of proving the challenged statute and regulation unconstitutional. The circuit court's ruling that Landmark's due-process rights were not violated is therefore affirmed.

*IV. Substantial Evidence to Support Board's Decision*

For its second point for reversal, Landmark contends that the board's decision was not supported by substantial evidence and was therefore arbitrary and capricious. Landmark contends that the board based its decision "exclusively on the percentage of Landmark's sales to a random selection of retailers." Landmark argues further that the board's selection of seventy percent of sales as the threshold amount triggering mandatory reporting was arbitrary and capricious. The board responds that its decision was supported by substantial evidence, relying on, among other things, the evidence of Landmark's sales records showing that specified customers purchased predominantly or only listed chemicals.

*A. Standard of Review*

 |₁₃This court has often repeated its standard of review for administrative decisions:

> Administrative decisions should be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. To set an agency decision aside as arbitrary and capricious, an appellant must demonstrate that the decision was made without consideration and with a disregard of the facts. We review the entire record to establish whether the decision is supported by relevant evidence that a reasonable mind might accept as adequate to support a conclusion. An administrative agency, like a jury, is free to believe or disbelieve any witness and, on review, the evidence is given its strongest probative force to support the administrative ruling. A court may not reverse a decision of an agency if there is substantial evidence to support that

decision. The appellant has the burden of proving an absence of substantial evidence....

... We have further held that to establish a lack of substantial evidence, an appellant must demonstrate that the proof before the administrative board was so nearly undisputed that fair-minded persons could not reach its conclusions. The question on review is not whether the testimony would have supported a contrary finding but whether it supports the finding that was made.

*H.T. Hackney*, 353 Ark. at 807–08, 120 S.W.3d at 86–87 (citations omitted) (quoting *Mid–South Road Builders, Inc. v. Ark. Contractors Licensing Bd.*, 328 Ark. 630, 633, 946 S.W.2d 649, 651 (1997)).

*B. Analysis*

Landmark mischaracterizes the board's decision. The board's order did not conclude that the transactions meeting the seventy percent threshold were per se suspicious, and did not use seventy percent as the single factor for its decision. The board's order stated that in the transactions listed in Attachment A to its order, the customer bought predominantly or only listed chemicals. Our review of these transactions, made possible only because the board included them in its supplemental addendum, reveals that these transactions were only one basis for the board's decision. The order further stated that Landmark made sales to two "non-traditional outlets." Finally, the order stated that, for a period of well over two years, Landmark maintained a storage facility for List 1 chemicals without a license and without a proper alarm system or temperature and humidity controls. Thus, despite the testimony at the hearing, the board's order clearly did not rely solely on the seventy percent threshold.

Our review of the record reveals that in addition to the nearly 300 transactions with some twenty customers that the board identified as involving predominantly listed chemicals, the following substantial evidence was presented at the hearing to support the board's order. George Gadd, DEA senior investigator, testified that he visited one of Landmark's customers, The Back Alley, and saw no over-the-counter products on public display. Gadd stated that when he inquired as to where the pseudoephedrine was located, the owner responded that he kept them in his office and that he was well aware that his customers all used methamphetamine. Steve Leslie Barber, owner of The Back Alley, testified that he purchased many items from Landmark, but the predominant thing he purchased was pseudoephedrine. He stated that he kept one box of Max Brand Pseudo 60 mg in the front case of his store, while he stored the remainder of the boxes in his office. Don Price testified that he worked at Ladies World and ordered merchandise from Landmark. He stated that Landmark's representative routinely sold him more than his two-package allotment of pseudoephedrine by forging invoices. Rusty McSpadden testified that he visited Landmark's unlicensed storage facility and spoke with Landmark's representative, as well as the storage facility's representative. Both persons told McSpadden that there were no alarms, climate controls, or pest controls in place.

We conclude that the foregoing evidence constitutes substantial evidence to support the board's order and that the order was therefore not arbitrary and capricious. Both of Landmark's arguments for reversal are without merit. We affirm the order of the circuit court in all respects.